439 P.2d 234

**W. S. BROCK, Plaintiff-Appellee,**

v.

**Wayne ADAMS, Defendant-Appellant,**

v.

**John B. CASTLE and H. Brace Wigzell,**
**Third-Party Defendants-Appellees.**

**No. 8497.**

Supreme Court of New Mexico.

April 1, 1968.

**18**

Dewie B. Leach, Hobbs, for appellee, Brock.

McCormick, Lusk, Paine & Feezer, Carlsbad, for third-party defendants-appellees.

Frazier, Cusack & Schnedar, Roswell, for appellant.

## OPINION

MOISE, Justice.

Defendant appeals from a judgment in the amount of $4,244.17 plus attorney fees and court costs entered against him on account of a promissory note which he executed to third-party defendants, and which was by them negotiated to plaintiff without recourse.

The facts surrounding the transaction are somewhat confused. However, they establish that defendant is a real estate broker in Roswell. Carmeli Allen, who had once been employed by him, owned an interest in El Alto Lodge in Ruidoso which she wanted to sell and which defendant undertook to dispose of for her. Defendant succeeded in procuring the third-party defendants as purchasers and, on March 25, 1964, a written contract of purchase and sale was entered into between Mrs. Allen as seller and Castle and Wigzell as purchasers. The total purchase price stated in the contract was $58,000.00, with a down payment of $6,500.00, acknowledged as having been received.

The proof establishes and the trial court found, although attacked by defendant, that on March 25, 1964, the date of the contract, a promissory note, not mentioned in the agreement, was executed by defendant to third-party defendants in the amount of $6,500.00, due seventy-five days after date, and delivered to William Siegenthaler, to be held by him as attorney for third-party defendants, not as an escrow agent, as security for any amounts of which third-party defendants were not then aware which might be required to be expended by them over and above the agreed purchase price

of $58,000.00 in order to acquire title to the property.

Thereafter, on May 1, 1964, another written agreement was executed by the parties wherein the consideration is recited as amounts paid and to be paid by third-party defendants and assumption by them of certain amounts owing by Carmeli Allen. These items amounted to $59,180.23. Again, no mention is made of the note previously executed by defendant. The trial court made a finding that a parol agreement to increase the purchase price to $59,180.23 was reached, contingent upon defendant paying off a note held in escrow in the bank with a quit claim deed covering the property, and on which defendant was a co-maker; that the note was not paid off by defendant, and third-party defendants paid it in full, and the court gave no effect to the agreement to increase the price. Rather, he concluded that the price set forth in the May 1, 1964 agreement resulted from a mutual mistake of the parties.

The court also found pursuant to evidence introduced at the trial that it was necessary to expend and that actually the third-party defendants did expend $4,244.17 in payment of amounts constituting unknown liens or lienable items at the date of the contract which had to be cleared, and for which the $6,500.00 note was given as security, and that $4,244.17, plus 10% attorney fees, as provided in the note together with costs was due and owing by defendant.

On September 1, 1965, which was after maturity, the third-party defendants endorsed the note to plaintiff without recourse, in payment of a pre-existing debt due him in the amount of $2,500.00 plus amounts to accrue for additional services to be performed thereafter so that the total consideration paid by plaintiff to third-party defendants for the note amounted to $3,067.50.

Upon refusal of defendant to pay any part of the note, suit was instituted against him by plaintiff. In addition to denying

any indebtedness due on the note, and that plaintiff had any rights to recover thereon, defendant filed a cross claim against plaintiff seeking damages for trouble and expense to which he had been put by plaintiff's alleged wrongful action in bringing suit on the note. Defendant also filed a third-party complaint against Castle and Wigzell as third-party defendants seeking to recover from them any amounts which defendant, third-party plaintiff, might be required to pay plaintiff, as well as damages for the trouble and expense to which he had been put by virtue of the transfer of the note.

Defendant's first two points on appeal are based upon the contention the note sued upon was executed by him as security to third-party defendants for the amount advanced by them as a down payment, and was to be held by third-party defendants' attorney in escrow to guarantee completion of the transaction; that the deal was completed, and although defendant was thereupon entitled to a return of his note it was wrongfully delivered by the escrow agent to third-party defendants and by them negotiated to plaintiff.

Defendants complain that the trial court ordered reformation of the contract although no such relief was sought or was proper under the pleadings. Also, it is argued that the trial court permitted parol modification of a written contract. We do not agree with defendant's appraisal of the case.

As we view it, the suit was on the note which is not mentioned in either the March 25th or the May 1st contract. We perceive of no error incidental to the proof of the purpose and intention of the parties in connection with the note. Evidence concerning the written contracts for the purchase and sale of the El Alto Lodge was received, not for the purpose of in any way modifying the contracts, but rather to explain the circumstances surrounding the execution and delivery of the note. Even if considered as a part of the over-all contract, the note was given pursuant to agreements not covered by the writing and would accordingly be admissible under rules of evidence heretofore recognized by us. See Maine v. Garvin, 76 N.M. 546, 417 P.2d 40 (1966); also see § 50A–3–119, N.M.S.A. 1953.

The evidence, while conflicting, is substantial in support of the trial court's finding that the note was given to secure the purchasers against undisclosed debts which might become liens against the premises, and was not merely to be held in escrow to secure completion of the transaction and to be returned to the maker when this occurred. Being supported by substantial evidence, we will not disturb the finding to this effect on appeal, and the facts as found stand as the facts of the case. Sawyer v. Washington National Insurance Co., 78 N.M. 201, 429 P.2d 901 (1967); Gilmer v. Gilmer, 77 N.M. 137, 419 P.2d 976 (1966); Gish v. Hart, 75 N.M. 765, 411 P.2d 349 (1966).

In view of the determination that the note was given to guarantee repayment of amounts the purchasers might have to pay over and above the agreed purchase price, and was not delivered in escrow as claimed by defendant, it becomes necessary to consider what that price was. In the March 25th agreement it is stated as $58,000.00. In the May 1st agreement the items agreed to be paid by the purchasers total $59,180.-23. In a statement prepared by the seller more than a year after the deal was closed, the consideration is set forth as $59,000.00 "plus $1,000.00 on Additional Agreement" or a total of $60,000.00.

The trial court found that the correct figure was $58,000.00, and concluded that the total set forth in the May 1st contract resulted from a mutual mistake. Defendant attacks this conclusion as not within the pleadings or proof and asserts an absence of an indispensable party—the seller—to accomplish a reformation of the agreement.

In our view of the case it is not necessary for us to resolve this issue. The court having determined that the note was delivered by defendant to secure the pur-

chasers against amounts in excess of $58,000.00 that they might be called upon to pay to clear the title, and the purchasers having paid or obligated themselves to pay $62,244.18, they were entitled to judgment for the difference, or $4,244.18. No question of reformation of the May 1st agreement was before the court. All that we are called upon to determine is whether the evidence substantially supports the findings made by the court, and whether the conclusions reached properly follow. Star Realty Co. v. Sellers, 73 N.M. 207, 387 P.2d 319 (1963). We have read the transcript of evidence in full and are convinced that the findings are adequately supported and in turn support the conclusions reached. As a matter of fact, it is entirely reasonable, in our view, that experienced business men entering upon the purchase of property for a given price ($58,000.00), where the obligations might conceivably exceed the purchase price, would refuse to advance any money on the deal until assured that they would not at later date find themselves in a position of having advanced a certain amount, and then have no one to look to for repayment of additional amounts necessary to clear the title, or else lose what they had put into the deal. This is what the purchasers testified they were trying to protect against when they put up the original $6,500.00, and this is what the trial court determined was the purpose and intent of the parties when the note was executed and delivered. Defendant's first two points are ruled against him.

In his Point III appellant argues that appellee is a holder not in due course and, accordingly, if entitled to recover anything it would only be the consideration given by him for the note, and not the amount found by the court to be due to the payees. Our attention is directed to § 50A–3–302, N.M.S.A.1953, which defines a holder in due course, as follows:

"(1) A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

(2) A payee may be a holder in due course.

(3) * * *

(4) * * *"

and § 50A–3–303, N.M.S.A.1953, which states:

"A holder takes the instrument for value

(a) to the extent that the agreed consideration has been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process; or

(b) when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due; * * *

(c) * * *"

In § 50A–3–305, N.M.S.A.1953, the rights of a holder in due course are stated as follows:

"To the extent that a holder is a holder in due course he takes the instrument free from

(1) all claims to it on the part of any person; and

(2) all defenses of any party to the instrument with whom the holder has not dealt except * * *."

and in § 50A–3–306, N.M.S.A.1953, the rights of one not a holder in due course are set forth:

"Unless he has the rights of a holder in due course any person takes the instrument subject to

(a) all valid claims to it on the part of any person; and

(b) all defenses of any party which would be available in an action on a simple contract; and

(c) the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or de-

livery for a special purpose (section 3–408 [50A–3–408]); and

(d) the defense that he or a person through whom he holds the instrument acquired it by theft, or that payment or satisfaction to such holder would be inconsistent with the terms of a restrictive endorsement. The claim of any third person to the instrument is not otherwise available as a defense to any party liable thereon unless the third person himself defends the action for such party."

It is apparent that appellant's argument must fail for two reasons. In our view, defendant was a holder for value (this fact is not decisive) under the provisions of § 50A–3–303, supra, with all the rights of a holder as provided in § 50A–3–301, N.M. S.A.1953, which reads:

"The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in section 3–603 [50A–3–603] on payment or satisfaction, discharge it or enforce payment in his own name."

■ If we assume appellee was a holder not in due course, as appellee appears to concede, the court found there were no valid claims or defenses to the note insofar as the $4,244.17 advanced by the payee was concerned, and the provisions of § 50A–3–306, supra, in no way require a denial of right to this amount to appellee even though not a holder in due course.

■ On the other hand, we would observe that if the payees were holders in due course, and under § 50A–3–302(2), supra, they could be, then aside from any question concerning the status of appellee as a holder in due course, or not in due course, he acquired all rights that the payee had therein, under § 50A–3–201, N.M.S.A.1953, wherein are set forth the rights of a transferee, as follows:

"(1) Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the in-

strument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course."

See, Draftsmen's Comments to § 3–201, U.C.C. We would add that we see nothing in § 50A–3–119, N.M.S.A.1953, dealing with the effect of other writings on an instrument which in any way alters our conclusion. The provision in the March 25th contract to the effect appellant, as realtor in the transaction, should not be liable for damages "by reason of acts, defaults or other nonaction by, between or upon the part of the purchasers or sellers" cannot possibly be construed as a modification of the obligation on the note undertaken by appellant, and in no way referred to in the contract.

■ Defendant's Point V complains that the judgment provides for 6% interest on the amount adjudged to be due from the date of the judgment until paid. He argues that the note did not provide for interest, and the findings and conclusions entered by the court made no mention of interest. It does not appear that any ruling on this question was ever sought at the trial court level. Not being jurisdictional, it cannot be raised for the first time in this court. § 21–2–1(20), N.M.S.A.1953; Davis v. Severson, 71 N.M. 480, 379 P.2d 774 (1963).

Defendant's Point IV claims error by the trial court in refusing to enter judgment for damages in his favor on his cross-claim and third-party complaint. These claims were based on the position that the note had been wrongfully delivered to the third-party defendants by the escrow agent and by them transferred to plaintiff. Inasmuch as it has been determined that Points I and II, wherein the same arguments were advanced, had no merit, it necessarily follows that this point likewise lacks support.

There being no reversible error, the judgment of the trial court should be affirmed.

It is so ordered.

CHAVEZ, C. J., and COMPTON, J., concur.