HANE *v.* EXTEN, ET AL.

[No. 56, September Term, 1969.]

*Decided December 2, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN and SINGLEY, JJ.

*William E. Gallagher, Jr.* for appellant.

*Harvey B. Steinberg* for appellee.

SINGLEY, J., delivered the opinion of the Court.

John B. Hane is the assignee of the note of Theta Electronic Laboratories, Inc. (Theta) in the stated amount of $15,377.07, with interest at six per cent per annum. The note was dated 10 August 1964; stipulated that the first monthly payment of $320.47 would be due five months from date, or on 10 January 1965; and that "In the event of the failure to pay the interest or principal,

as the same becomes due on this Note the entire debt represented hereby shall at the end of thirty (30) days become due and demandable * * *." The note was assigned without recourse to Hane by George B. and Marguerite F. Thomson, the original payees, on 26 November 1965. A default having occurred in the making of the monthly payments, Hane took judgments by confession in the Circuit Court for Montgomery County on 7 June 1967 against Theta and three individuals, Gerald M. Exten, Emil L. O'Neil, and James W. Hane, and their wives, who had endorsed Theta's note. On motion of the Extens, the judgment was vacated as to them and the case came on for trial on the merits before the court without a jury. From a judgment for the Extens for costs, Hane has appealed.

This case raises the familiar question: Must Hane show that the Extens were given notice of presentment and dishonor before he can hold them on their endorsement?

The court below, in finding for the Extens, relied on the provisions of Uniform Commercial Code (the U.C.C.), Maryland Code (1957, 1964 Repl. Vol.) Art. 95 B. § 3-414(1) of the U.C.C. provides:

> "Unless the indorsement otherwise specifies (as by such words as 'without recourse') every indorser engages that upon dishonor and any necessary notice of dishonor and protest he will pay the instrument according to its tenor at the time of his indorsement to the holder or to any subsequent indorser who takes it up, even though the indorser who takes it up is not obligated to do so."

§ 3-501 (1) (b) provides that "Presentment for payment is necessary to charge any indorser" and § 3-501 (2) (a) that "Notice of any dishonor is necessary to charge any indorser," in each case subject, however, to the provisions of § 3-511 which recite the circumstances under which notice of dishonor may be waived or excused, none

of which is here present. § 3-502 (1) (a) makes it clear that unless presentment or notice of dishonor is waived or excused, unreasonable delay will discharge an indorser. See 1 Hawkland, *A Transactional Guide to the Uniform Commercial Code* (1964) § 206 at 495-97.

There was testimony from which the trier of facts could find as he did that presentment and notice of dishonor were unduly delayed.

It is clear that Hane held the note from November, 1965, until some time in April 1967 before he made demand for payment. U.C.C. § 3-503 (1) (d) provides that "Where an instrument is accelerated presentment for payment is due within a reasonable time after the acceleration." "Reasonable time" is not defined in § 3-503, except that § 3-503 (2) provides, "A reasonable time for presentment is determined by the nature of the instrument, any usage of banking or trade and the facts of the particular case." But § 1-204 (2) characterizes it: "What is a reasonable time for taking any action depends on the nature, purposes and circumstances of such action."

Reasonableness is primarily a question for the fact finder. *Vandenberg v. Siter*, 204 Pa. Super. 392, 204 A. 2d 494 (1964) ; 11 Am. Jur.2d *Bills and Notes* § 754 (1963) ; 1 *Anderson's Uniform Commercial Code*, Commentary, § 1-204:3 (1961) at 40. We see no reason to disturb the lower court's finding that Hane's delay of almost 18 months in presenting the note "was unreasonable from any viewpoint." See Maryland Rule 886 a.

As regards notice of dishonor, § 3-508 (2) requires that notice be given by persons other than banks "before midnight of the third business day after dishonor or receipt of notice of dishonor." Exten, called as an adverse witness by Hane, testified that his first notice that the note had not been paid was the entry of the confessed judgment on 7 June 1967. Hane's brother testified that demand had been made about 15 April 1967. He was uncertain as to when he had given Exten notice of dishonor, but finally conceded that it was "within a week."

The lower court found that the ambiguity of this testimony, coupled with Exten's denial that he had received *any* notice before 7 June fell short of meeting the three day notice requirement of the U.C.C. The date of giving notice of dishonor is a question of fact, solely for determination by the trier of facts. *First Pennsylvania Banking & Trust Co. v. DeLise,* 186 Pa. Super. 398, 142 A. 2d 401 (1958). We cannot say that the court erred in its finding.

In the absence of evidence that presentment and notice of dishonor were waived or excused, Hane's unreasonable delay discharged the Extens, § 3-502 (1) (a).

Hane would have us hold that presentment and notice of dishonor were impliedly excused under § 3-511 (2) (b) because Exten himself had dishonored the note or had no reason to expect that the note would be paid. Hane finds support for this theory in testimony that payment had been demanded of Theta, the obligor, in behalf of the Thomsons, the payees, in February or March of 1965, at a time when Exten was president of Theta, an office from which he was removed in April or May of 1965. The court below rejected this contention on the ground that there was no evidence that Exten dishonored the note in his individual capacity.

There is an even more persuasive reason which negates the contention that Exten had reason to expect that the note would not be paid. Hane's brother, called as a witness by Hane, testified on cross examination that on 26 November 1965, the balance due on the note was $13,154.94. While the manner in which $2,222.13 had been paid was unexplained, it would appear that at least six monthly payments of $320.47 had been met, with the result that payments were current for the period when Exten was president. As Exten testified:

> "This particular note was paid down to something like $13,000 under my management, and it was pursuant to my discharge that no further payments were made."

In the face of this Hane offered no proof that Exten, in his capacity as president of Theta, knew or should have known that the note would not be paid. An indorser's knowledge of the maker's insolvency, standing alone, will not excuse the giving of notice of dishonor. *Plitt v. Grim*, 220 Md. 632, 638, 155 A. 2d 672 (1959). There is not even a suggestion that Exten may have consented to an extension of time for payment. *Leonard v. Union Trust Co.*, 140 Md. 192, 117 A. 318 (1922).

Hane makes much of the fact that he is a holder in due course. We doubt that he was, since there is some evidence that he took the note with notice that it was overdue, § 3-302 (1) (c). He testified that he assumed that the face amount of $15,377.07 was unpaid when he took the note in November, 1965, when, by the terms of the note, 11 monthly payments should have been made. He apparently held to this belief to the end, since he caused judgment to be confessed for the full amount of the note. In addition, Judge Mathias in the trial below asked him whether he had been able to read the note and realize that some payments were past due. Hane responded affirmatively. Whether Hane was or was not a holder in due course has no relevance to the issue here presented. In either case timely presentment and notice of dishonor were required to hold the Extens. Whether Hane was or was not a holder in due course is of no significance unless there was a defense which could have been asserted against the payee. *Brock v. Adams*, 79 N.M. 17, 439 P.2d 234 (1968) ; *Persson v. McCormick*, 412 P.2d 619 (Okla.1966) ; and § 3-305.

*Judgment affirmed, costs to be paid by appellant.*