744 P.2d 174

Robert H. LEVENSON,
Plaintiff–Appellee,

v.

Johnny F. MOBLEY, James M. Tyler, Jr., Linda P. Tyler, William J. Whitesell and Frances R. Whitesell, Defendants–Appellants.

No. 16496.

Supreme Court of New Mexico.

Oct. 14, 1987.

Dubois, Caffrey, Cooksey & Bishcoff, Lydia A. Mangold, George A. Dubois, Albuquerque, for defendants-appellants.

Arthur A. Greenfield, Albuquerque, for plaintiff-appellee.

## OPINION

RANSOM, Justice.

Levenson brought a breach of contract suit against five business associates (defendants). A bench trial was held in which judgment was rendered against defendants in the amount of $50,119 plus costs and prejudgment interest. On appeal, defendants challenge the judgment and the trial court's denial of a motion for new trial. We affirm.

Levenson and defendants were shareholders in approximately twenty-six entities, one of which was North American Land Developments, Inc., (NALD), a subchapter S corporation. The effect of its tax status meant that undistributed profits and losses were attributed directly to the shareholders in proportion to their holdings. In 1973, Levenson sought to sever all business relationships with defendants. This case concerns the buyout arrangement with regard only to NALD.

Several written agreements were made between Levenson and defendants to accomplish the buyout of Levenson's NALD shares. The agreement which is the basis of this action, dated June 13, 1973, reads in its entirety as follows:

The undersigned hereby promise that if Robert H. Levenson or his wife are required to include in their income for federal income tax reporting purposes any taxable income of North American Land Developments, Inc., for its fiscal year ending April 30, 1973 for which Robert H. Levenson and his wife have tax liability, the undersigned will cause to be paid

to Robert H. Levenson and his wife upon demand in cash an amount equal to the amount of taxable income of North American Land Developments, Inc., required to be included in the income of Robert H. Levenson and his wife.

After the agreement was signed, NALD filed its federal income tax return for the fiscal year ending April 30, 1973, on which it reported a loss. Thereafter, Levenson filed his 1973 individual income tax return which included his proportionate share of the loss. In 1976, however, as part of an audit of Levenson's federal income tax return for 1973 and other years, the IRS disallowed the NALD loss and instead required Levenson to include his share of NALD's income. (NALD was involved in a separate IRS audit in which the loss originally reported was determined to be profit.) Levenson commenced a tax court action appealing the IRS determination, but later entered into a compromise regarding his distributive share of the income. This compromise was approved and made a judgment of the U.S. Tax Court on July 19, 1982, and Levenson included in his 1973 income an amount of $50,119 as his share of NALD's income for the year ending April 30, 1973. Of significance is the fact that Levenson was able to avoid payment of any tax on this amount due to a 1976 tax loss carryback which was unrelated to NALD.

The dispositive issue on appeal involves whether the trial court erred in finding that the agreement was clear and unambiguous. Is the contract directly expressed by its terms, or is it reasonably susceptible to two or more constructions? Defendants submit that the trial court mischaracterized the agreement as an "income reporting" agreement. Further, they challenged two findings of fact and four conclusions of law which relate directly to the language of the agreement. Additional issues on appeal involve the admission of parol and hearsay evidence, a substantial evidence question, and the admission of the U.S. Tax Court decision with attachments.

Relying on *Tsakres v. Owens*, 561 P.2d 1218 (Alaska 1977), defendants contend that an ambiguity exists in the language of the agreement, claiming it is subject to more than one reasonable interpretation. First, defendants challenge the use of the word "require" in one finding of fact and two conclusions of law which state in pertinent part that Levenson was "required" to report the $50,119 as income from NALD's operations. Instead, defendants contend that a "required reporting" of income was a condition precedent which was never satisfied by Levenson. Defendants reason that Levenson "voluntarily agreed" to include the disputed amount in his 1973 income tax return during settlement negotiations with the IRS, thus he was not "required" to include it. Further, defendants allege that a second condition precedent exists by virtue of the language "income * * * for which * * * Levenson * * * [has] tax liability." The challenged conclusions of law state that Levenson had a "tax liability" for the NALD income reported. Defendants submit that, due to the unrelated 1976 carryback, Levenson did not pay any tax on the $50,119, thus he incurred no tax liability, and defendants' liability under the contract never arose. In support of this claim, defendants rely on *Smith v. Tinley*, 100 N.M. 663, 674 P.2d 1123 (1984), for the proposition that "any interpretation by the trial court which renders a contract such that reasonable men would not enter into it is disfavored." We do not agree with defendants' appraisal of the case.

Whether an ambiguity exists is a question of law to be decided by the court. *Young v. Thomas*, 93 N.M. 677, 604 P.2d 370 (1979). This Court has held that a contract is deemed ambiguous only if it is reasonably and fairly susceptible of different constructions. *Vickers v. North Am. Land Devs., Inc.*, 94 N.M. 65, 68, 607 P.2d 603, 606 (1980). The mere fact that the parties are in disagreement on construction to be given to the contract does not necessarily establish an ambiguity. *Id.* In making its determination, the court must consider the agreement as a whole. *Shaeffer v. Kelton*, 95 N.M. 182, 185, 619 P.2d 1226, 1229 (1980). Moreover, where the terms of an agreement are plainly stated, the inten-

tion of the parties must be ascertained from the language used. *Hoge v. Farmers Market & Supply Co.*, 61 N.M. 138, 140, 296 P.2d 476, 477–78 (1956). Absent a finding of ambiguity, provisions of a contract need only be applied, rather than construed or interpreted. *McKinney v. Davis*, 84 N.M. 352, 353, 503 P.2d 332, 333 (1972). Defendants' reliance on *Smith* is misplaced in that the district court properly found that the agreement between Levenson and defendants was clear and unambiguous, thus any interpretation beyond application of plain language was unnecessary.

■ The analysis must focus upon the meaning of the words "required" and "tax liability" as used in the agreement. As a general rule, the words employed will be assigned their ordinary meaning unless it is shown that the parties used them in a different sense. "[A]bsent express language to the contrary, a court should apply the everyday meaning in interpreting the terms of a contract." *Crownover v. National Farmers Union Property & Casualty Co.*, 100 N.M. 568, 572, 673 P.2d 1301, 1305 (1983) (citing *Clear v. Patterson*, 80 N.M. 654, 459 P.2d 358 (Ct.App.1969)). The ordinary meaning of the word "require" is "to ask, request, or desire (a person) to do something; to ask for authoritatively or imperatively." *Webster's Third New Int'l Dictionary* 1929 (1981). This meaning must prevail over defendants' contention that Levenson's settlement with the IRS was necessarily voluntary and not within the ordinary meaning of "require." An acceptance of defendants' reasoning would be inconsistent with the rule of law in *Crownover*. Without a determination of ambiguity, the court need not reach the question of intent of the parties regarding an extraordinary use of the word "required." The intent of the parties deduced from the language employed by them is conclusive. *Davies v. Boyd*, 73 N.M. 85, 385 P.2d 950 (1963).

The pivotal determination, then, is whether the report of NALD income was "required." It is questioned whether Levenson could have settled with the IRS for any amount because of the alleged agreed-upon reimbursement by defendants. However, the determination of the $50,119 amount was an IRS decision, not one of the tax court or Levenson. At oral argument, appellants' counsel was asked if a tax settlement was ever voluntary. The response was that Levenson should not have settled while the NALD audit was unresolved, and, in this sense, the settlement was voluntary. In *Thermopolis Northwest Electric Co. v. Ireland*, 119 F.2d 409 (10th Cir.1941), the court was asked whether "the sum paid in compromise and settlement of [a] * * * suit was voluntarily paid." The court held that "[a] sum paid in a prudent settlement of a suit made in good faith is paid under compulsion." *Id.* at 412. We agree. Therefore, based upon the supported findings of fact that (1) there was no evidence that the compromise entered into by Levenson was influenced in any manner by the income reporting agreement, and (2) that, after the tax court appeal, Levenson entered into a compromise with the IRS which was approved and made a judgment of the U.S. Tax Court, the trial court could properly conclude that "'Levenson was required to report as taxable income from NALD * * * the sum of $50,119.'"

■ Defendants' second argument regarding the phrase "tax liability" is also inconsistent with applicable law. The plain meaning rule is subject to several exceptions, one of which applies to defendants' interpretation of the phrase "tax liability." Technical words ordinarily will be taken in a technical sense unless context or local usage shows intention to the contrary. *See United States v. Continental Oil Co.*, 237 F.Supp. 294, 298 (D.C.W.D.Ok.1964), *aff'd*, 364 F.2d 516 (10th Cir.1966); *Josefowicz v. Porter*, 32 N.J.Super. 585, 590, 108 A.2d 865, 868 (1954); *see Crown Northwest Equip., Inc. v. Donald M. Drake Co.*, 49 Or.App. 679, 620 P.2d 946 (1980), *cert. denied*, 290 Or. 727, 631 P.2d 340 (1981); 4 S. Williston, *A Treatise on the Law of Contracts* § 618 at 707 (3d ed. 1961). In the case at bar, the term "tax liability" must be accorded the technical meaning as used in the Internal Revenue Code. Title 26 of the Code defines "tax liability" as "the tax imposed by this chapter for the taxable

year" and enumerates several exceptions, none of which apply to the facts of this case. I.R.C. § 26 (1986).

A "carryback" is a provision in tax law which permits a taxpayer to apply to prior years a net operating loss from a subsequent year, necessitating a recomputation of tax in the preceding years. *Black's Law Dictionary* 194 (5th ed. 1979); I.R.C. § 172(b) (1986). It is only after taxable income is determined, and an amount of tax is calculated and charged to a taxpayer, that a taxpayer may employ a devise such as a "carryback" to reduce the amount of tax imposed.

Defendants would have this Court hold that "tax liability" has a technical meaning of "actual payment of taxes." This reasoning conflicts with the applicable law and is not persuasive to this Court. It is inconsistent with the agreement to pay the taxable income of NALD which was required to be reported. There was no agreement to reimburse taxes actually paid. Moreover, the language in the agreement should not become inoperative simply because of the fact that Levenson was able to meet his tax liability through the application of a carryback. The district court correctly concluded that Levenson had tax liability for the NALD income which he was required to report, "whether or not he was able to avoid payment of taxes on such income by offsetting deductions not related to NALD," and that it was "irrelevant that Levenson did not pay taxes on the * * * $50,119."

■ When an issue to be determined rests upon interpretation of documentary evidence, this Court is in as good a position as the trial court to determine the facts and draw its own conclusions. *City of Raton v. Vermejo Conservancy Dist.*, 101 N.M. 95, 103, 678 P.2d 1170, 1178 (1984). We note that words and expressions in lawyer-prepared instruments are to be given their legal connotations. *Miller v. Weller*, 288 F.2d 438, 440 (3d Cir.1961). The trial court found that both the buyout and income reporting agreements were drafted and reviewed by attorneys for the parties. Generally, when terms having a definite legal meaning are knowingly used in a written instrument, the parties will be presumed to have intended such terms to have their proper legal meaning and significance, at least in the absence of any contrary intention appearing in the instrument. *Malbone Garage, Inc. v. Minkin*, 272 A.D. 109, 72 N.Y.S.2d 327 (1947). We agree with the trial court that this agreement was directly expressed by its terms.

■ Next, we address defendants' claim that a violation of the parol evidence rule occurred when the trial court allowed Levenson's testimony about discussions with defendants' attorney prior to the execution of the agreement. The contention that this testimony was prejudicial and went to the meaning of the agreement is without merit. Evidence extrinsic to a written contract is properly admitted to determine the circumstances under which the parties contracted and the purpose of the contract. *In re Estate of Russell v. Quinn*, 69 Cal.2d 200, 70 Cal.Rptr. 561, 444 P.2d 353 (1968); *Rush v. Rush*, 85 Nev. 623, 626–27, 460 P.2d 844, 846 (1969); *see also Brock v. Adams*, 79 N.M. 17, 19, 439 P.2d 234, 236 (1968) (evidence concerning written contract was properly received, not for purpose of modifying contract but to explain surrounding circumstances).

In order to determine initially whether the terms of *any written instrument* are clear, definite and free from ambiguity the court must examine the instrument in the light of the circumstances surrounding its execution so as to ascertain what the parties meant by the words used. Only then can it be determined whether the seemingly clear language of the instrument is in fact ambiguous.

*In re Estate of Russell*, 69 Cal.2d at 208, 70 Cal.Rptr. at 566, 444 P.2d at 359 (emphasis in original). The challenged testimony of Levenson clearly revolves around his personal knowledge surrounding the circumstances under which the agreement was executed and was properly received by the trial court.

■ On the other hand, we agree with defendants that the hearsay rule was violated with the admission of Levenson's tes-

timony which referred to statements of NALD's attorney, a non-party. However, error in the admission of evidence by the trial court, sitting without a jury, does not require that judgment be reversed unless appellants satisfy their burden to show the error was prejudicial. *Keil v. Wilson*, 47 N.M. 43, 44–45, 133 P.2d 705, 706 (1942). Defendants made no showing of prejudice. This testimony regarding the circumstances under which the parties contracted did not affect the plain language of the agreement upon which the decision is based.

Further, defendants challenge the court's finding that defendants did not request to be consulted about Levenson's tax court proceedings. A review of the record, including the correspondence between counsel, indicates that substantial evidence supports the finding. An appellate court will not disturb trial court findings which are supported by substantial evidence. *Cave v. Cave*, 81 N.M. 797, 474 P.2d 480 (1970).

Defendants' final challenge concerns the admission of the U.S. Tax Court decision, stipulation, audit statements and worksheets. Issues of authentication and hearsay were raised. Defendants, however, failed to show that any error was prejudicial or that it substantially influenced the judgment of the court. The decision and stipulation were otherwise admitted. The audit statements and worksheets only corroborated the $50,119 settlement figure which was not in dispute.

Based upon the foregoing discussion, the judgment of the trial court is affirmed in its entirety.

IT IS SO ORDERED.

SOSA, Senior Justice, and STOWERS, J., concur.