**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 5 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SCHWARTZ AND HAYS, a New
Mexico General Partnership,

      Plaintiff - Counter-Defendant -
Appellant,

v.

KAY HAFEN; IRENE HAFEN;
NORTHRISE ASSOCIATES, a New
Mexico General Partnership,

      Defendants - Counter-Claimants
- Appellees.

No. 03-2068
(D. New Mexico)
(D.Ct. No. CIV-01-420-LH/KBM)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, Circuit Judge, **HOLLOWAY**, Senior Circuit Judge, and
**O'BRIEN**, Circuit Judge.

---

Schwartz & Hays (S&H), a New Mexico general partnership,[1] sued Kay and

Irene Hafen and Northrise Associates, a New Mexico general partnership, (the

Hafens) for breach of contract and interference of contract. The district court

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] Troy Hays and Charles Schwartz are S&H's general partners.

entered judgment in favor of the Hafens on both claims.  S&H appeals, challenging only the court's judgment on its interference of contract claim.[2] Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.[3]

## BACKGROUND

### A.     Development of the Park

In 1985, the Hafens began developing the Northrise Business Park (the Park) in Las Cruces, New Mexico.  The Park consists of 205 acres of land and is located on the northside of Las Cruces at the southeast corner of I-25 and U.S. 70.  Shaped like a horseshoe, the park borders the east side of I-25, wraps around the south side of U.S. 70, and turns south along Roadrunner Parkway which runs parallel to I-25.  The Hafens decided that the basic land use plan and design for the Park should be light industrial along I-25, commercial along I-70 and high-density residential and limited office along Roadrunner Parkway.  Consequently, the Hafens obtained the appropriate zoning restrictions, which were approved by the Las Cruces City Council.

---

[2] We admonish S&H for failing to provide a statement of the relevant facts (separate from a statement of the case) in its opening brief as required by FED. R. APP. P. 28(a)(7).

[3] The district court had diversity jurisdiction over this case based on the following: (1) S&H's general partners are citizens of New Mexico and/or Texas, (2) the Hafens are citizens of Arizona and (3) the partners of Northrise Associates are all citizens of Arizona.  *See Depex Reina 9 P'ship v. Texas Int'l Petroleum Corp.*, 897 F.2d 461, 463 (10th Cir. 1990) ("In the case of a partnership, the partnership is a citizen of each state in which a partner is a citizen.").

At issue in this case are Parcels 11 through 14 of the Park, which lie on either side of Roadrunner Parkway. In 1985, an ordinance was passed by the City changing the zoning of these parcels from R-3 to "Conditional R-4." In the Las Cruces Zoning Code, R-4 zoning is defined as "High-Density Residential and Limited Office District." (Appellees' Supp. App. at 47.) The Code also provides for conditional zoning, which allows the City Council to approve a zoning change "subject to one or more conditions which restrict the use of land beyond that otherwise provided by the district." (*Id.* at 45.) In this case, the zoning conditions placed on Parcels 11 through 14 included: (1) "Adherence to private covenants, design guidelines and architectural control specified by Development Plan including any subsequent amendments" and (2) "Permitted uses: All uses permitted in the R-4 zone."[4] (*Id.* at 44.)

Subsequently, the Hafens established the Northrise Business Park Master Plan (Development Plan) and restrictive covenants for the Park. Consistent with the ordinance, the Development Plan provided, *inter alia*, that development of Parcels 11-14 would be limited to "uses permitted in the R-4 zone." (*Id.* at 51.)

**B.     Agreement with S&H**

On January 3, 1994, the Hafens and S&H entered into an Agreement for the

---

[4] Pursuant to the Las Cruces Zoning Code, a "permitted use" is a use "permitted by right" and a "special use" is "a use . . . not permitted by right" and which is allowed only if the City grants a permit after a public hearing. (Appellees' Supp. App. at 48, 50.)

Preferential Purchase of Real Estate (1994 Agreement) under which S&H acquired a ten-year exclusive option to buy some or all of Parcels 11-14. Pursuant to the 1994 Agreement, S&H agreed to (1) accept and comply with the Development Plan and covenants in developing the parcels, (2) not seek to rezone any of the parcels, and (3) refer to the Hafens any prospective purchasers interested in acquiring the parcels for uses for which they were not zoned.

Between 1994 and 1997, S&H exercised its rights under the 1994 Agreement and purchased all but six acres of Parcels 12 and 13. In 1997, the Hafens discovered S&H was marketing Parcels 11 and 14 for development as a hospital, which the Hafens believed was a "special use" not a "permitted use" under the Las Cruces Zoning Code. They advised S&H that such development was contrary to the zoning limitations and Development Plan and demanded S&H to cease such marketing. They also amended the Park's covenants to provide that absent written approval by the Hafens or owners of 75% of the land in the Park, development was limited to those uses permitted by right in the applicable zoning district and those permitted by the Development Plan.

## C. S&H's state court lawsuit against Hafens

In February 1998, S&H filed suit in state court against the Hafens, alleging it had a right under the 1994 Agreement to develop Parcels 11 and 14 as a

hospital and the amended covenants were illegal and invalid.[5]  In October 1998, the court granted summary judgment in favor of the Hafens, finding that a permitted use of the land did not include the development of a hospital and the amended covenants were appropriately adopted.[6]

On October 26, 1999, the Hafens and S&H reached a settlement concerning the litigation and signed a memorandum setting forth the relevant terms of the settlement; a more detailed agreement was finalized on December 23, 1999 (Settlement Agreement.)[7]  Pursuant to the Settlement Agreement, S&H was permitted to buy all of Parcels 11 and 14, and 6 acres in Parcel 13 at a certain price if the closing occurred on or before January 1, 2000, such price subject to esclators if the closing took place after such date.  The parties also agreed that the

---

[5]  The Hafens filed a counterclaim against S&H seeking to terminate the 1994 Agreement.  Although the Hafens moved for summary judgment on this claim, the state court found that a genuine issue of material fact existed precluding summary judgment. This claim was eventually dismissed pursuant to the parties' settlement.

[6] While the litigation was pending, S&H filed an application with the City of Las Cruces for a special use permit, authorizing the development of Parcels 11 and 14 as a hospital.  The application was initially approved by the Planning and Zoning Commission.  Following appeal by the Hafens, however, the City Council denied such permit, finding (1) S&H did not have the right as a property owner to sign the special use permit application and Kay Hafen should sign such application, (2) a hospital is not a permitted use in the R-4 zone and would be a violation of the conditions on the zoning designation for the property, and (3) a hospital is not permitted by the Development Plan and private covenants governing the property.

[7]  Troy Hays signed the Settlement Agreement on behalf of himself and S&H on December 23, 1999.  Although Charles Schwartz was to sign the agreement on December 29, 1999, he did not actually sign it until January 24, 2000.

1997 amended covenants were valid. Paragraph 5 of the Settlement Agreement

provided in relevant part:

> Any and all marketing and/or utilization of said parcels by S&H,
> shall identify the parcels as being subject to the amended covenants
> and restrictions . . . and shall indicate the parcels may be used or
> developed only for R-4 permitted uses, (that is, used permitted by
> right) as defined by the City of Las Cruces Zoning Code . . . . S&H
> and its successors in interest to these parcels will never seek to
> change the uses or zoning of the subject parcels. S&H shall not,
> directly or indirectly, initiate, urge, encourage, participate in or
> support any effort to change the uses or zoning of the parcels subject
> to the agreements of these parties or to change or expand the R-4
> permitted uses, (that is, used permitted by right). S&H shall not be
> subject to any liability should an unrelated successor in interest
> violate this provision without S&H's involvement. S&H shall
> provide any subsequent purchaser of land from S&H with written
> notice of this provision as a part of the negotiations of S&H for its
> sale of said land.

(Appellant's App. at 37.) On January 4, 2000, pursuant to the parties' settlement,

the state court dismissed the lawsuit.

**D.      1999 Closing**

In early December 1999, S&H informed the Hafens that it wished to

purchase Parcels 11 and 14, and the remainder of Parcel 13 before the end of the

year. The closing was scheduled for December 29, 1999. On that same date,

S&H planned to immediately re-convey these parcels to a partnership created by

George Rawson and his family (the Rawsons.)

On or about December 27, 1999, the Hafens sent supplemental escrow

instructions to the title company. One of the instructions was for the title

company to obtain the signatures of the buyer on a "Re-Zoning Prohibition," a document essentially tracking the language of paragraph 5 of the 1999 Settlement Agreement. The instructions also noted that Ernie Williams, the Hafens' attorney, would act as the Hafens' agent at closing.[8]

On the morning of closing, S&H, the Rawsons and Williams met at the title company. Williams discussed the conditional zoning and covenant restrictions on the parcels with the Rawsons, informing them the Hafens were not willing to amend or modify them.[9] Believing development of the parcels was not financially feasible without such re-zoning, the Rawsons refused to close the transaction.[10] S&H purchased the parcels at a later date, but at the increased price, and sold them to another buyer.[11]

---

[8] Williams died in a traffic accident in May 2000.

[9] Although the Hafens initially required S&H and the Rawsons to sign the "Re-Zoning Prohibition," the Hafens ultimately withdrew such requirement. The deposition testimony of the parties, as well as that of the various witnesses to the transaction, is inconsistent as to when the withdrawal occurred. The district court did not make a factual finding on this issue and we decline to do so as it is unnecessary for our resolution of this case. In addition, factual disputes exist as to whether, prior to the day of closing, S&H provided the Rawsons with full disclosure concerning the amended covenants and paragraph 5 of the Settlement Agreement. Again, the district court did not resolve the conflict and we decline to do so as it has no bearing on our determination of this case.

[10] The Rawsons had planned to develop the parcels as retail and office spaces, which would have required re-zoning of at least part of the land.

[11] S&H paid an additional $4000 per acre (a total of $136,000) to the Hafens than it would have paid if they had purchased the property on December 29, 1999.

S&H filed suit in the United States District Court for the District of New Mexico, alleging interference with contractual relations and breach of contract. The Hafens moved for summary judgment which the district court granted.[12] Pursuant to FED. R. CIV. P. 54(b), final judgment against S&H was entered on February 10, 2003. This appeal followed.

## STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment, applying the same legal standard used by the district court under FED. R. CIV. P. 56(c). *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1182 (10th Cir. 1995). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "We consider the 'factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Rohrbaugh*, 53 F.3d at 1182-83 (quoting *Blue Circle Cement, Inc. v. Bd. of County Comm'rs.*, 27 F.3d 1499, 1503 (10th Cir.

---

[12] The Hafens countersued for breach of the Settlement Agreement. They filed a motion for summary judgment on their counterclaim which the district court granted in part and denied in part. After the district court granted the Hafens' motion for summary judgment as to S&H's complaint, the parties agreed the Hafens would dismiss their counterclaim if S&H either did not pursue an appeal of the summary judgment ruling against them or if such appeal was pursued, that ruling is affirmed. The court adopted this agreement as part of the final judgment.

1994)).

"A federal court sitting in diversity . . . must apply the substantive law of the forum state, including its choice of law rules." *Vitkus v. Beatrice Co.*, 127 F.3d 936, 941 (10th Cir. 1997). This case was tried in the United States District Court for the District of New Mexico. Interference with contract is a tort cause of action. "In determining which state's law to apply in a tort action, New Mexico generally follows the doctrine of *lex loci delicti*, meaning [t]he law of the place where the crime or wrong took place." *Estate of Gilmore*, 124 N.M. 119, 122, 946 P.2d 1130, 1133 (N.M. Ct. App. 1997) (citation and quotations omitted). Because the alleged interference occurred at the closing in New Mexico, the law of New Mexico controls and the parties do not contend otherwise.[13]

## DISCUSSION

New Mexico recognizes the torts of interference of an existing contract and interference with a prospective contract. *Fikes v. Furst*, 134 N.M. 602, 609, 81 P.3d 545, 552 (N.M. 2003). Because S&H claims the Hafens interfered with the closing, this case involves the latter tort.[14]

---

[13] Additionally, the Settlement Agreement between the parties, which we are called to interpret, contains a New Mexico choice-of-law provision. *Burge v. Mid-Continent Cas. Co.*, 123 N.M. 1, 5, 933 P.2d 210, 214 (N.M. 1996) ("New Mexico law recognizes the validity of choice of law provisions contained in contracts.").

[14] In *Fikes*, the New Mexico Supreme Court clarified the differences between the two torts, stating:
[G]reater protection is given to the interest in an existing contract than to the

New Mexico first recognized the tort of interference with prospective contracts in *M&M Rental Tools, Inc. v. Milchem, Inc.*, 94 N.M. 449, 612 P.2d 241 (N.M. Ct. App. 1980). It adopted the Restatement of Torts 2d, § 766B, which describes the tort as:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

94 N.M. at 453, 612 P.2d at 245. To demonstrate improper interference, "[e]ither an improper motive (solely to harm plaintiff)[] or an improper means is required . . . ." *Id.* at 454, 612 P.2d at 246. The plaintiff has the burden of proving the interference was improper. *Id.* at 455, 612 P.2d at 247. Even if such burden is met, the defendant may escape liability if he is able to demonstrate that his conduct was privileged or justified. *Id.*

---

interest in acquiring prospective contractual relations. Thus, for a claim based on . . . an existing contract, the plaintiff must still prove that the defendant acted with an improper motive or improper means, but the improper motive need not be the sole motive . . . . [Additionally,] more conduct will be privileged for interference with prospective contracts than will be privileged for interference with existing contracts. A person may be privileged to interfere with a prospective contract unless the sole motive is to harm a third party; in contrast, a person may not be privileged to interfere with an existing contract, even if the person has mixed motives.

134 N.M. at 609, 81 P.3d at 552 (citations and quotations omitted).

-10-

The district court determined the Hafens intentionally interfered with the closing but that the Hafens did not act with an improper motive. Specifically, it determined there was no evidence showing that "the actions by the Hafens [were] solely to harm S&H" and concluded "[t]he motive was clear; they wanted to protect their zoning, the zoning that they had acquired after a great deal of litigation and negotiation." (Appellant's App. at 88.) Neither party contests this ruling. S&H, however, challenges the district court's conclusions that the Hafens did not act with improper means and their actions were privileged. Because we conclude the Hafens' actions were privileged, we need not address whether they acted with improper means.

## A. Privilege

"Liability may not be imposed for every interference with the business relations of another. It is only where the interference is without justification or privilege." *Williams v. Ashcraft*, 72 N.M. 120, 121, 381 P.2d 55, 56 (N.M. 1963). A privilege is "a good faith assertion or threat by the one interfering to protect a legally-protected interest of his own which he believes might otherwise be impaired or destroyed by performance of the contract." *Speer v. Cimosz*, 97 N.M. 602, 606, 642 P.2d 205, 209 (N.M. Ct. App. 1982). As the Second Restatement of Torts states:

> One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate

means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction.

Restatement (Second) of Torts § 773 (1979). New Mexico has recognized that a defendant's interference is justified or privileged if (1) the defendant has a contractual right to engage in such conduct, (2) the defendant had legitimate business purposes for acting the way it did, and (3) the defendant was protecting his own economic interests. *See Clough v. Adventist Health Sys., Inc.*, 108 N.M. 801, 806, 780 P.2d 627, 632 (N.M. 1989) (business purposes)*; Williams,* 72 N.M. at 121, 381 P.2d at 56 (economic interests); *Bank of New Mexico v. Sholer*, 102 N.M. 348, 350, 695 P.2d 832, 834 (N.M. Ct. App. 1985) (contractual right).

Below, the Hafens argued they were privileged to act as they did at the closing. Specifically, they alleged they had a good faith belief they were (1) protecting their legitimate interests in enforcing the land use restrictions governing Parcels 11 and 14, (2) protecting their rights under paragraph 5 of the Settlement Agreement, and (3) maintaining the integrity of the Development Plan. The district court agreed, stating:

> [T]he Hafens were privileged in their actions as set forth in illustration number one to section 773 of the Restatement of Torts, which is quite close to the situation: A entered into a contract to buy Blackacre from B. C honestly believes that he has a right of way over Blackacre. With knowledge of the contract, C in good faith informs A of his interest and threatens to enforce it by legal proceedings if and . . . when the owner of Blackacre[] should deny

-12-

his claim. A thereupon refuses to perform his contract with B. It says that C's interference is not improper under the rules stated in this section. And I believe that is the law of New Mexico. So the Hafens' motion for summary judgment is granted.

(Appellant's App. at 89.)

On appeal, S&H contends the Hafens were not privileged or justified in interfering with the closing. In support of this argument, S&H asserts: (1) the covenants and zoning were a matter of public record and therefore, there was no need for the Hafens to inform the Rawsons of them, (2) the City of Las Cruces, not the Hafens, is the zoning authority and as such, the Hafens had no right to require the Rawsons to agree in advance not to change the zoning, (3) no evidence existed showing that the Rawsons were going to change the zoning, (4) the Rawsons were purchasing the property from S&H, not the Hafens, and (5) the Hafens had no rights under the Settlement Agreement to enforce against the Rawsons.

Contrary to S&H's contention, the Hafens were privileged in acting as they did at closing based on the Settlement Agreement between S&H and the Hafens. The Settlement Agreement between S&H and the Hafens states that "S&H and *its successors in interest* to these parcels will never seek to change the uses or zoning of the subject parcels." (Appellant's App. at 37.) Although S&H claims the Settlement Agreement does not bind third-party purchasers and that the term "successors in interest" only refers to S&H and any form S&H may take in the future, this argument is in direct conflict with the plain language of the agreement.[15]

---

[15] S&H maintains the term "successors in interest" in the sentence "S&H and its successors in interest to these parcels will never seek to change the uses or zoning of the

Under New Mexico law, "[a]ll settlement agreements are contracts and therefore are subject to contract law . . . ." *Herrera v. Herrera*, 126 N.M. 705, 708, 974 P.2d 675, 678 (N.M. Ct. App. 1999). "Generally, the goal of contract interpretation is to ascertain the intentions of the contracting parties." *Gallegos v. Pueblo of Tesuque*, 132 N.M. 207, 218, 46 P.3d 668, 679 (N.M.) (quotations omitted), *cert. denied*, 536 U.S. 990 (2002). "[W]here the terms of an agreement are plainly stated, the intention of the parties must be ascertained from the language used." *Levenson v. Mobley*, 106 N.M. 399, 401-02, 744 P.2d 174, 176-77 (N.M. 1987). "As a general rule, the words employed will be assigned their ordinary meaning unless it is shown that the parties used them in a different sense." *Id.* at 402, 744 P.2d at 177. An exception to the plain meaning rule applies to technical words, which will ordinarily "be taken in a technical sense unless context or local usage shows intention to the contrary." *Id.* (defining "tax liability" according to the technical meaning as defined in the Internal Revenue Code).

Here, the technical term "successor in interest" is "[o]ne who follows another in ownership or control of the property." BLACK'S LAW DICTIONARY 1446 (7th Ed.

subject parcels" clearly only applies to those successors in interest related to S&H. In support of this argument, S&H points to a later sentence in Paragraph 5, which refers to "unrelated successors in interest." It contends that by referring to "unrelated successors in interest" later in the paragraph, the initial reference to "successors in interest" must mean only those related to S&H. S&H's argument is flawed. If the parties had intended only to prevent S&H and those successors in interest related to it from seeking zoning changes, the parties would have said so. In fact, the clarification of "successors in interest" later in the paragraph to those unrelated to S&H evidences the parties' intent that the initial reference to "successors in interest" must include both related and unrelated successors in interest.

-14-

1999). *See also Romero v. New Mexico*, 97 N.M. 569, 572, 642 P.2d 172, 175 (N.M. 1982). Under this definition, the Rawsons clearly were potential successors in interest of Parcels 12 and 14. Therefore, the Settlement Agreement not only bound S&H but the Rawsons as well. Consequently, the Hafens were privileged in informing the Rawsons of their obligations under the Settlement Agreement, which included the prohibition on attempts to change the zoning of the subject parcels.

Based on the above, the district court's judgment in favor of the Hafens is **AFFIRMED**.

Entered by the Court:

**Terrence L. O'Brien**
United States Circuit Judge