674 P.2d 1123

Ronald R. SMITH, Petitioner-Appellee,

v.

Robert E. TINLEY, a/k/a Bob Tinley, Respondent-Appellant.

No. 14911.

Supreme Court of New Mexico.

Jan. 13, 1984.

Smith. In support of the ruling, the court found that Smith's former partner, Robert E. Tinley, breached a default provision contained in the partnership agreement by failing to make his share of certain payments required by the agreement. The trial court's conclusion that Tinley breached the default provision was essentially premised on the failure to make the above payments even after being notified of the default by Smith.

The issues upon which this case turns are 1) whether the default provision was ambiguous and, if so, whether its meaning was properly interpreted by the trial court; 2) whether Smith waived the default; and 3) whether Smith's conduct mandates an equitable accounting. We conclude that the default provision was ambiguous, and was properly invoked by Smith. We thus affirm the trial court.

The dispute centers on the interpretation of the default provisions in paragraph eight (8) of the partnership agreement. Specifically our inquiry is directed at that portion of the paragraph which provides that if "either Smith or Tinley cannot make their one-half (½) contribution for the remaining principal and interest payments then the party not making the payment shall be in default and the party in default shall deed all of his right, title and interest to the remaining party." The trial court found this provision ambiguous and essentially interpreted the term "cannot make" to mean that the default provision could be invoked if either Smith or Tinley "do not make" the required payments.

Davis & Dempsey, Philip B. Davis, Albuquerque, for appellant.

Sheehan & Sheehan, Timothy Sheehan, Nancy C. Kirkwood, Albuquerque, for appellee.

## OPINION

SOSA, Senior Justice.

After trial on an action by appellee Ronald Smith to dissolve a partnership, the trial court ruled from the bench in favor of

As with any other contract, the principal objective in construing this agreement is to ascertain the intentions of the parties. *Manual Lujan Insurance, Inc. v. Jordan*, 100 N.M. 513, 673 P.2d 1306, 22 SBB 1375 (1983). In construing the terms of a written agreement, the document is considered as a whole with each part accorded significance and meaning according to its place in the agreement. *Schultz & Lindsay Construction Co. v. State*, 83 N.M. 534, 494 P.2d 612 (1972).

It is evident that the terms of the default provision are ambiguous when viewed in light of other relevant paragraphs. The document at paragraph six (6), by use of the word "shall", imposes an unqualified affirmative duty on each party to make required payments on a "fifty-fifty (50–50) basis." Moreover, paragraph eight (8) variously refers to the partner failing to make the required payments as the "defaulting party" and the "party not making payment." Premising default on the condition that either party "cannot" make payments is somewhat anomalous in light of the unqualified duty to make payments and the attendant description of the defaulting party as the party failing to fulfill this duty.

Tinley would have us believe that the parties have premised their mutual obligations to make payments, payments on which the viability of the partnership depended, on as tenuous and indefinite a condition as ability to pay. This is certainly not apparent from the term "cannot make" when viewed in the context of other relevant provisions in the agreement. As indicated, these provisions speak in terms of a mandatory, unqualified duty to pay. There is no other reference to ability to pay. Adopting Tinley's view would be inconsistent with the apparent intent of the parties and would render the prospect of Smith's enforcing the agreement quite indefinite. Ability to pay could conceivably be premised on a plethora of financial conditions totally unforseeable by, or outside the control of, one or both parties. These preconditions to payment might include sufficient net assets, sufficient liquid assets, or even an adequate line of credit.

■ Tinley's proposed construction would contravene the rule that a reasonable interpretation of a contract is favored, *Brown v. American Bank of Commerce,* 79 N.M. 222, 441 P.2d 751 (1968), while an interpretation rendering a contract such that reasonable men would not enter into it is disfavored. *Mortgage Clearing Corp. v. Baughman Lumber Co.,* 435 P.2d 135 (Okl. 1967). In addition, the ambiguities present in the agreement should be construed against Tinley since ambiguities in a contract are to be construed against the party who drafted it. *Schultz & Lindsay Construction Co. v. State.* It is undisputed that Tinley drafted the partnership agreement.

■ Applying the various rules of construction discussed above we conclude that the trial court was correct in interpreting the word "cannot" in the default provision to essentially mean "do not."

■ Tinley's arguments that Smith waived the default provision or that Smith's actions otherwise merit an equitable accounting are also without merit. The record indicates that the two letters sent by Smith to Tinley in March and December 1982 do not indicate an intent to waive the default provision. Rather they constitute demands for payment under penalty of default and dissolution of the partnership. In addition there is absolutely no indication that Smith's demands invited late payments, thereby causing Tinley to rely to his detriment on such alleged representations. Neither letter prompted any payment whatsoever by Tinley. Tinley has not tendered the required payments at any meaningful time throughout the dispute. There being no implied waiver and no detrimental reliance thereon, we conclude that the default provision was properly invoked. *See Shaeffer v. Kelton,* 95 N.M. 182, 619 P.2d 1226 (1980).

■ Lastly, Tinley cannot successfully rely on *Capo v. Century Life Insurance Co.,* 94 N.M. 373, 610 P.2d 1202 (1980) for his assertion that an equitable accounting is mandated. *Capo* stands for the proposition that where one party to an illegal contract is at fault, that party cannot gain any advantage by his own act. The agreement here is far from illegal. Moreover, Smith is not in *pari delicto* with Tinley. It is Tinley, not Smith, that is at fault. Smith merely seeks to invoke the remedy provided in the partnership agreement arising from Tinley's failure to make payments.

The record indicates that Smith made all of his required payments under the partnership agreement. The record further re-

flects that Smith made Tinley's payments only after Smith's demands for payments went unheeded and only after it became clear that the partnership was in danger of losing the real estate that it held due to failure to make timely payments. Smith made Tinley's long overdue payments not only on the real estate contract assumed by the partnership but on taxes and engineering fees owed by the partnership. In fact the record indicates that Smith's contributions to the "fifty-fifty" venture totalled over $275,000.00 while Tinley paid in approximately $80,000, a difference of almost $200,000.00. To allow Tinley an equitable accounting on the facts of this case would be ludicrous. Under the default provision, Smith is entitled to all of the rights, title and interest in the real property and need only return Tinley's contributions with interest at the rate of eight and one-half (8½) percent per annum as specified in the agreement.

The trial court is affirmed in all respects.

IT IS SO ORDERED.

PAYNE and STOWERS, JJ., concur.