**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2013-NMCA-042

Filing Date: January 28, 2013

Docket No. 30,920

WILLIE GARCIA and VIOLA GARCIA,
husband and wife,

      Plaintiffs-Appellants,

v.

SONOMA RANCH EAST II, LLC,

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**James T. Martin, District Judge**

Joseph M. Holmes, P.A.
Joseph M. Holmes
Las Cruces, NM

for Appellants

Miller Stratvert, P.A.
Joshua L. Smith
Lawrence R. White
Las Cruces, NM

for Appellee

**OPINION**

**WECHSLER, Judge.**

**{1}** In this contract dispute, Plaintiffs Willie and Viola Garcia (the Garcias) executed an Option Agreement granting Defendant Sonoma Ranch East II, LLC or its designee (Sonoma Ranch) the option to purchase real property. When Sonoma Ranch failed to make a payment under the Option Agreement, the Garcias filed a breach of contract action seeking full payment of the sales price. The district court held that the failure of Sonoma Ranch to make

a payment under the Option Agreement ended its obligations and any rights it possessed. The district court granted summary judgment to Sonoma Ranch. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

**{2}** The complaint and the undisputed facts upon which the district court entered summary judgment indicate that the parties entered into the Option Agreement on or about April 26, 2006. Under the Option Agreement, Sonoma Ranch acquired an option to purchase a 25.121 acre tract of the Garcias' real property. The term of the option was from April 26, 2006 until May 31, 2015. The consideration for the grant of the option was $750,000, with $150,000 payable within fifteen days and annual payments of $100,000 plus six percent interest on the unpaid sum due. All principal sums paid were to be applied to the purchase price. The parties signed an escrow agreement and placed exchanged deeds with the escrow agent. Sonoma Ranch made the annual payment called for in the Option Agreement to the escrow agent in April 2007. On April 8, 2008, the escrow agent informed Sonoma Ranch of its annual payment due April 26, 2008. Sonoma Ranch did not make the payment.

**{3}** The Option Agreement contained other terms pertinent to the parties' arguments. During the term of the Option Agreement, it required Sonoma Ranch to pay ad valorem real estate taxes and assessments and the Garcias to remove any liens or encumbrances as requested by Sonoma Ranch; to cooperate with Sonoma Ranch in its actions to obtain annexation and subdivision approval; and to provide Sonoma Ranch access to the property.

**{4}** The district court granted Sonoma Ranch's motion for summary judgment. It determined that the terms of the Option Agreement were clear and unambiguous, that the Option Agreement "was for an option to purchase real estate and was terminated upon default by" Sonoma Ranch, and that by "not making the payment," Sonoma Ranch ended its rights under the Option Agreement. The Garcias moved for reconsideration, alleging that Sonoma Ranch owed them the full amount of the consideration to acquire the option to purchase the real property because the Option Agreement did not provide for a different consideration if Sonoma Ranch elected to terminate the Option Agreement. The district court denied the motion for reconsideration.

**{5}** The Garcias appeal, making arguments that we recast as follows: (1) that summary judgment was not proper because there is a genuine issue of material fact as to whether the parties' agreement was an option; (2) that the district court erred in determining that the Option Agreement terminated upon Sonoma Ranch's non-payment; (3) that there are other genuine issues of fact remaining that preclude summary judgment; (4) that if the terms of the Option Agreement are clear and unambiguous, Sonoma Ranch owes them $750,000 for the grant of the option; and (5) that estoppel bars any claim that there are no bilateral obligations under the Option Agreement.

## THE AGREEMENT IN THIS CASE

**{6}** We initially discuss the agreement that underlies this appeal. The Garcias asserted in discovery and in their response in opposition to the motion for summary judgment that they believed that they were selling their property to Sonoma Ranch under an installment purchase agreement, and they assert in their brief in chief that they "continue to be under the impression that they sold the property to Sonoma Ranch."

**{7}** According to the Garcias, when they entered negotiations with Sonoma Ranch, David Steinborn, Sonoma Ranch's representative, "insisted on preparing a written agreement to confirm" the offer he had made for the Garcias' property. The parties then signed a document entitled Realtors Association of New Mexico Purchase Agreement - Vacant Land on February 7, 2006, by which the Garcias were to sell the real property to Sonoma Ranch for $750,000 with a down payment of $150,000 and a loan for $600,000. The Option Agreement and other documents were executed on or about April 26, 2006. The district court determined that "[t]he agreement between the parties was for an option to purchase real estate."

**{8}** The Garcias contend that the district court erred in this determination and that questions of fact remain concerning whether the transaction was a purchase and sale instead of an option. They assert that the requirements of the agreement of establishing an escrow account and procuring title insurance are more consistent with a purchase and sale than an option and that inconsistencies in the document appear to indicate that the documents are incomplete. The Garcias have thus raised the issue of whether the parties intended a contract to purchase or an option to purchase.

**{9}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. A court may consider evidence concerning the making of a contract in order to determine whether the contract before it is unclear or ambiguous. *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 508-09, 817 P.2d 238, 242-43 (1991). Generally, if a contract is ambiguous, resolution of the ambiguity in the contractual interpretation is a factual question. *See id.* at 507, 817 P.2d at 241. However, in determining whether "the parties' expressions of mutual assent lack clarity" so as to present an ambiguity, "[i]f the evidence presented is so plain that no reasonable person could hold any way but one, then the court may interpret the meaning as a matter of law." *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993).

**{10}** The details of the agreements before us lead to the conclusion that there is no ambiguity and that we may interpret their meaning as a matter of law. We first elaborate on these details. In February 2006, the parties entered into an agreement by using a Realtors Association of New Mexico purchase agreement form. The agreement refers to the parties as "buyer" and "seller," and, among other things, states the purchase price, establishes the terms for closing, allocates closing costs, requires a survey/improvement location report and title insurance, and provides for an escrow account. Under the heading CASH OR FINANCING CONDITIONS AND OBLIGATIONS, the document states, "Real Estate

3

Option. For terms, see attached addendum." We are unable to locate an addendum in the record on appeal. The only other reference to an option in the documents signed on February 7, 2006 is the hand-written word "Option" written after the title "Realtors[] Association of New Mexico Purchase Agreement—Vacant Land" on the real estate licensee disclosure document. Additionally, in addressing the date Sonoma Ranch would take possession, the parties marked a box entitled "Other," rather than selecting the date of closing or the date of disbursement of the proceeds. No further explanation was included.

**{11}** The Option Agreement, on the other hand, expressly states that it involves the grant of an option to purchase the property and uses the term "option" throughout. The parties are exclusively referred to as "Optionors" and "Optionee." The Option Agreement, among other things, states the consideration for the grant of the option and the term of the option, restates the purchase price as $30,000 per acre, addresses liens and taxes that arise during the option period, and provides for an escrow account, title insurance, and allocation of costs. It provides for closing "within [twenty-five] days of the time that Optionee provides written notice of its intent to exercise the option granted by [the Option] Agreement." It states that it "contains the complete and integrated agreement of the parties hereto and all previous agreements made by them are merged herein."

**{12}** The parties' February 2006 agreement expressed their original intent to enter the transaction. This intent was embodied in a purchase and sale agreement that also included evidence of an intent to create an option. At this point, the documentation of the parties' intent was ambiguous. The parties then clarified their intent with the Option Agreement. The Option Agreement clearly states that it is the grant of an option. By necessity, the terms of the purchase and sale are included within the Option Agreement. *See Ritchie v. Cordray*, 461 N.E.2d 325, 327 (Ohio Ct. App. 1983) (stating that an option and a contract to sell are separate and independent, even though contained in a single document and that "the option is collateral to the main offer to sell"). Although the Garcias argue that the provisions for escrow and title insurance are more consistent with a purchase and sale, they do not explain the manner in which these provisions are so inconsistent with an option as to vitiate the creation of the option under the Option Agreement.

**{13}** The Garcias' strongest argument attacking the Option Agreement is its silence concerning the mechanism by which Sonoma Ranch could terminate its option. The Option Agreement provided only that Sonoma Ranch would pay $750,000 for the grant of the option, $150,000 within fifteen days of the execution of the Option Agreement and $100,000 plus interest in annual payments. To be sure, the Option Agreement could have more clearly stated the manner in which Sonoma Ranch would provide notice of its intent to not exercise the option. However, as a matter of law, this silence is overcome by the nature of an option agreement.

**{14}** "Defined at its most basic level, an option is simply a contract to keep an offer open." 1 Samuel Williston, *A Treatise on the Law of Contracts* § 5:15, at 1013 (Richard A. Lord ed., 4th ed. 2007). An option contract is unilateral in its character. *Id.* § 5:15, at 1016; *Lake*

4

*Shore Country Club v. Brand*, 171 N.E. 494, 501 (Ill. 1930). It is an irrevocable offer on the part of the optionor, which the optionee has the right to exercise in accordance with the terms of the option. *Lake Shore Country Club*, 171 N.E. at 501; 1 Williston, *supra*, § 5:16, at 1022. It does not bind the optionee. 1 Williston, *supra*, § 5:15, at 1016 (stating that an option binds the optionor, "but leav[es] the optionee free to either accept or not, at his or her whim"). By virtue of its unilateral character, an option to purchase is not a contract to purchase. *Lake Shore Country Club*, 171 N.E. at 501; 1 Williston, *supra*, § 5:16, at 1024-26.

**{15}** Based on the unilateral nature of an option, Sonoma Ranch could either continue to make the annual payments and exercise the option or cease making the payments and thereby not exercise the option. The Option Agreement would not be an agreement granting an option if Sonoma Ranch did not have the ability to decide to not exercise the option. Moreover, we do not consider the failure to specifically designate the time within which Sonoma Ranch had to act in order to elect not to exercise the option to be problematic. As a general rule, if no time is specified as to the duration of an option, the option is open for a reasonable time. 1 Williston, *supra*, § 5:15, at 1016.

**{16}** The integration clause of the Option Agreement eliminates any doubt as to the evolution of the transaction. The expressions in the Option Agreement make it clear that the original lack of clarity indicated in the February 2006 agreement was resolved in favor of the grant of an option. Sonoma Ranch was given the time to decide if it wanted to fully commit to the transaction without fear that it would lose the offer.

**{17}** The Option Agreement's integration clause further expressed the parties' intent that the Option Agreement, not any prior agreement, was their final intent. Although a party may rely on extrinsic evidence to demonstrate the intended interpretation of an integration clause in a contract, *see Nellis v. Farmers Ins. Co. of Ariz.*, 2012-NMCA-020, ¶¶ 48-53, 272 P.3d 143, *cert. denied*, 2011-NMCERT-011, ___ P.3d ___, other than to state that they understood the transaction to be one of a purchase and sale, the Garcias have not argued that the integration clause in the Option Agreement should not be given effect. The essence of the formation of a contract is the objective, mutual assent of the parties, not an individual's private belief. *See Pope v. Gap, Inc.*, 1998-NMCA-103, ¶ 13, 125 N.M. 376, 961 P.2d 1283 ("Mutual assent is based on objective evidence, not the private, undisclosed thoughts of the parties."). The purpose of extrinsic evidence in order to determine the scope and nature of a contract is to develop the circumstances surrounding the formation of the contract so as to ascertain the objective manifestation of intent. *See Nellis*, 2012-NMCA-020, ¶ 49 (stating that "the introduction of extrinsic evidence [is] designed to determine the circumstances under which the parties contracted and the purpose of the contract." (internal quotation marks and citation omitted)). The district court did not err in determining that the parties' agreement was an option to purchase real estate.

**TERMINATION OF THE OPTION AGREEMENT ON NON-PAYMENT**

**{18}** The Garcias contend that the district court erred in its ruling that Sonoma Ranch's

5

non-payment ended its obligations under the Option Agreement. We view the propriety of the district court's determination to depend on the nature of the Option Agreement. Because the Option Agreement granted Sonoma Ranch an option, unilateral in nature, Sonoma Ranch had the option to purchase the Garcias' property under the terms of the option. *See Lake Shore Country Club*, 171 N.E. at 501 ("An option contract is unilateral."). The terms included the payment of $30,000 per acre for the approximately twenty-five acres. They further included an initial payment of $150,000 and annual payments of $100,000. By failing to make an annual payment, Sonoma Ranch placed itself in a position in which it had not complied with the terms of the option and would not be able to exercise its option rights. *See Master Builders, Inc. v. Cabbell*, 95 N.M. 371, 374, 622 P.2d 276, 279 (Ct. App. 1980) ("Failure to exercise an option results in its loss.").

**{19}** The question for the district court was whether the Option Agreement obligated Sonoma Ranch to make the annual payments under the Option Agreement. Stated alternatively, the question is: if Sonoma Ranch as optionee does not exercise its option, can it nevertheless be required to pay for it? The question is unique because our courts have only considered the question in its reverse form, i.e., when an optionee has sought to exercise an option. *See, e.g.*, *Cillessen v. Kona Co.*, 73 N.M. 297, 301-02, 387 P.2d 867, 870 (1964) (affirming the denial of specific performance to optionee in an option contract); *Master Builders, Inc.*, 95 N.M. at 374, 622 P.2d at 279 (same). In those circumstances, the questions have revolved around whether an optionee seeking to exercise an option has complied with its terms. *Master Builders, Inc.*, 95 N.M. at 374, 622 P.2d at 279. The Garcias, as the optionors, are not seeking to enforce the option by making Sonoma Ranch complete the purchase, but they do want to receive payment for the option.

**{20}** Because of the unilateral nature of an option, we answer the question before us as a matter of law and determine that Sonoma Ranch is not required to pay for the option it does not exercise. The difficulty in this case arises because the Option Agreement is silent as to termination or notice of intent not to exercise the option. Indeed, if it provided such provisions, any issue would be directed to compliance with such provisions. The only provision concerning both notice and exercise of the option required Sonoma Ranch to notify the Garcias if it intended to exercise the option.

**{21}** However, in the context of an option, payment of the consideration for the option is inextricably connected to the option itself. If Sonoma Ranch did not pay an annual payment, the option would terminate. The payments were thus required for Sonoma Ranch to continue the option from year to year.

**{22}** The unilateral nature of an option explains the nature of this relationship. Although the agreement to provide an option for consideration is bilateral in that the optionor agrees to the terms of the option in exchange for the optionee's payment for the option, the bilateral nature of the agreement ends at that point. *See Dacy v. Vill. of Ruidoso*, 114 N.M. 699, 702, 845 P.2d 793, 796 (1992) (stating that a "bilateral contract involves reciprocal promises" while a unilateral contract "consists of a promise by only one of the contracting parties").

6

Sonoma Ranch had the unilateral option to make the purchase and thereby complete the contractual relationship between the parties. *See* 1 Williston, *supra*, § 5:15, at 1016. If Sonoma Ranch were obligated to continue to make annual payments even if it had elected not to purchase the property, the option would no longer be unilateral. If that were the case, Sonoma Ranch would be required to pay $750,000 for an option to purchase the property for $750,000, even if it immediately elected not to purchase the property. The effect of such a requirement would be tantamount to requiring Sonoma Ranch to purchase the property because, under the terms of the Option Agreement, it would pay $750,000 for the purchase. This effect is contrary to the notions of an option contract, the terms of the Option Agreement, and the parties' intent as presented in this appeal.

{23} The same reasoning applies to the Garcias' argument that they are entitled to the April 26, 2008 annual payment and accrued interest because Sonoma Ranch did not provide them with notice that it intended to terminate the Option Agreement. As we have discussed, Sonoma Ranch had the discretion to continue the option by virtue of the unilateral nature of the option. The Option Agreement required the annual payment but did not specify any notice in the event that Sonoma Ranch did not wish to exercise the option. Although Sonoma Ranch could have clarified its actions by providing notice, none was required. The annual payments were tied to the option. By not making the payment, Sonoma Ranch abandoned its rights and thereby terminated the Option Agreement.

**THE PRESENCE OF OTHER GENUINE ISSUES OF MATERIAL FACT**

{24} The Garcias also argue that various provisions of the Option Agreement extend beyond those of a typical option agreement so as to indicate the bilateral, rather than unilateral, nature of the Option Agreement. They point to provisions by which they were required to cooperate with Sonoma Ranch in its effort to obtain annexation, development, or rezoning of the property; to grant Sonoma Ranch an easement for ingress and egress and for construction purposes; to permit Sonoma Ranch to move dirt within and from the property; and to allow Sonoma Ranch to inspect the property.

{25} An option contract is considered unilateral because the optionee solely has the right to exercise the option. *Lake Shore Country Club*, 171 N.E. at 501. That is not to say that there are no bilateral aspects to an option agreement. There must be mutual consideration underlying the agreement. *Sisneros v. Citadel Broad. Co.*, 2006-NMCA-102, ¶ 31, 140 N.M. 266, 142 P.3d 34 ("A valid contract must possess mutuality of obligation." (internal quotation marks and citation omitted)). The provisions specified by the Garcias appear to be incidental to the grant of the option and do not appear to include any consideration apart from that pertaining to the grant of the option. As a result, these provisions do not alter the unilateral nature of the option that is the subject of the Option Agreement or raise genuine issues of material fact as to the nature of the transaction.

{26} The Garcias also make additional arguments addressing the district court's ruling concerning Sonoma Ranch's rights under the Option Agreement. They contend that the

7

district court ignored the provisions of the Option Agreement relating to notice and that time was of the essence. They assert, in this regard, that, even if the Option Agreement is unilateral, Sonoma Ranch did not give them appropriate notice under the Option Agreement to excuse non-payment of the April 26, 2008 annual payment, which included interest. This argument, however, misapprehends the district court's ruling.

**{27}** As we have stated, the unilateral nature of an option is such that the optionee has the discretion to exercise the option according to the terms of the option. *Lake Shore Country Club*, 171 N.E. at 501. Time is of the essence because if the terms for exercise of the option are not strictly enforced, the optionor will be subject to greater burdens than were the subject of the bargain. *See Best v. Edwards*, 176 P.3d 695, 698 (Ariz. Ct. App. 2008) ("[A]n option must be exercised in strict accordance with its terms because any relaxation of terms would substantively extend the option contract to subject one party to greater obligations than he bargained for." (internal quotation marks and citation omitted)). The Option Agreement did not address termination, and the district court determined that Sonoma Ranch's non-payment ended its obligations under the Option Agreement. This ruling is not affected by the notice provision of the Option Agreement. Although the annual payments included interest, by virtue of the unilateral nature of the option, Sonoma Ranch was not obligated to make the payment if it elected to end its obligation by non-payment. The Garcias's argument would have more force if the annual payment could somehow be construed to represent payment for option time passed—but it cannot. The annual payments required in the Option Agreement are clearly designed to keep the option open for the following year.

**THE AMOUNT OWED FOR THE OPTION**

**{28}** The Garcias alternatively argue that, under the language of the Option Agreement, Sonoma Ranch owes them $750,000 for the grant of the option. The Option Agreement states: "As consideration for the grant of this Option, Optionee shall pay Optionors the sum of $750,000." In addition, the Option Agreement provides that the property is approximately twenty-five acres and the option price is $30,000 per acre. Thus, the total price for the purchase of the property, subject to adjustment as stated in the Option Agreement, is approximately $750,000. Notwithstanding this language, the Garcias argue that the Option Agreement is actually a contract to purchase rather than an option.

**{29}** In essence, the Garcias contend that Sonoma Ranch was required to pay them $750,000 for an option to purchase property for $750,000. In other words, Sonoma Ranch had to pay the full amount of the purchase price even though it acquired only an option to purchase the property; an option that permitted Sonoma Ranch to elect not to purchase the property. The Garcias ask that we interpret the Option Agreement to reach a conclusion that is not commercially reasonable, and we decline to do so. *See Smith v. Tinley*, 100 N.M. 663, 665, 674 P.2d 1123, 1125 (1984) (observing that "an interpretation rendering a contract such that reasonable men would not enter into it is disfavored"); *see also C.R. Anthony Co.*, 112 N.M. at 510 n.5, 817 P.2d at 244 n.5 ("A court may employ the many rules of contract interpretation that do not depend on evidence extrinsic to the contract.").

8

**{30}** With regard to the rules of contract interpretation, the Garcias also argue that this Court should construe questions concerning the uncertainty of the Option Agreement against Sonoma Ranch because its attorney drafted the documents stating that "Sonoma Ranch is paying the Garcias the sum of $750,000.00, plus interest, for the grant of the option." While, as a general rule, we construe uncertainties in contracts most strongly against the party drafting the documents, our purpose in construing a contract is to give effect to the intent of the parties. *Smith*, 100 N.M. at 664-65, 674 P.2d at 1124-25; *Campos v. Homes by Joe Boyden, L.L.C.*, 2006-NMCA-086, ¶ 9, 140 N.M. 122, 140 P.3d 543. However, despite the Option Agreement's language concerning Sonoma Ranch's payment of $750,000 as consideration for the grant of the option, for the reasons we have discussed, we cannot agree with the Garcias that the Option Agreement is uncertain. Although the total consideration for the option was $750,000, the only understanding that comports with the unilateral nature of an option and is commercially reasonable is that the $750,000 consideration is the full consideration for the option if Sonoma Ranch were to elect to permit the option to run its full term.

**ESTOPPEL**

**{31}** The Garcias further contend that Sonoma Ranch should be estopped from arguing that the Option Agreement is a unilateral contract for a variety of reasons: (1) there are bilateral aspects to the Option Agreement; (2) Sonoma Ranch took actions in April and May 2008 that were contrary to an intent to terminate the Option Agreement; and (3) Sonoma Ranch has not caused a notice of the Option Agreement to be removed from the files of the county clerk. The Garcias raise the first and third contentions in their brief on appeal without having raised them in the district court. We thus do not address them on appeal. *See Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("To preserve error for review, a party must fairly invoke a ruling of the district court on the same grounds argued in this Court.").

**{32}** As to the second contention, the summary judgment record establishes that, in April 2008, Sonoma Ranch paid property taxes on the property to the county. In early May 2008, the Garcias signed an easement over the property with El Paso Electric Company after Willie Garcia was informed by the project manager for Sonoma Ranch that Sonoma Ranch did not have any objection to the Garcias doing so.

**{33}** The focus of the doctrine of equitable estoppel is "preventing a party from benefitting from deception or misleading conduct." *Mannick v. Wakeland*, 2005-NMCA-098, ¶ 28, 138 N.M. 113, 117 P.3d 919, *aff'd by Coppler & Mannick P.C. v. Wakeland*, 2005-NMSC-022, 138 N.M. 108, 117 P.3d 914. It requires (1) a false representation or concealment of material facts, (2) knowledge of true facts, and (3) an intention or expectation that an innocent party would rely on those facts. *Mem'l Med. Ctr., Inc. v. Tatsch Constr., Inc.*, 2000-NMSC-030, ¶ 9, 129 N.M. 677, 12 P.3d 431. The required reliance must be to the innocent party's detriment. *Id.*; *see also Mannick*, 2005-NMCA-098, ¶ 29 (stating that, in order for a court to provide equitable relief for equitable estoppel, the court must establish

9

facts that include a prejudicial change of position).

**{34}** Sonoma Ranch's payment of the taxes due could not give rise to equitable estoppel. Sonoma Ranch paid the taxes on April 14, 2008, twelve days before the annual payment became due. At that time, the Option Agreement was still in effect, and it required Sonoma Ranch to make the tax payment. The Garcias do not support their opposition to summary judgment with material facts that set forth an equitable estoppel issue concerning Sonoma Ranch's tax payment.

**{35}** As to the easement, although the development of the facts in this case could result in facts supporting the first two requirements of an equitable estoppel claim, the Garcias have not indicated the manner in which they have detrimentally relied on any representation stemming from Sonoma Ranch's action in connection with the easement. They have asserted that they have suffered damages because Sonoma Ranch has not made payments under the Option Agreement, but they have not linked the easement to the damages they have claimed. Nor have they asserted any argument that they were prejudiced or took any action, or failed to take any action, to their detriment because of Sonoma Ranch's action in connection with the easement. The doctrine of equitable estoppel does not apply in these circumstances.

**CONCLUSION**

**{36}** The district court did not err in concluding on summary judgment that Sonoma Ranch's failure to make the April 26, 2008 annual payment ended its obligations under the Option Agreement. The Garcias, as optionors, are not entitled to enforce the Option Agreement, which, by its nature as an option, gives Sonoma Ranch, as optionee, the right to fail to exercise its right to purchase the property. *See Cillessen*, 73 N.M. at 301, 387 P.2d at 870 (stating that the terms of an option contract must be "fully and completely accepted in all its parts" before becoming an executory contract). We affirm the district court's grant of summary judgment.

**{37}     IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**LINDA M. VANZI, Judge**

10

**Topic Index for *Garcia v. Sonoma Ranch East II, L.L.C.*, No. 30,920**

**CIVIL PROCEDURE**
Summary Judgment

**CONTRACTS**
Breach
Estoppel
Option Agreement

**PROPERTY**
Purchase Agreement