790 P.2d 1010

**GARDNER–ZEMKE COMPANY,
Plaintiff–Appellant,**

v.

**STATE of New Mexico, Fox & Associates,
Inc., Morrison–Knudson Company, Inc.
and W.C. Kruger & Associates, Defen-
dants–Appellees.**

No. 18517.

Supreme Court of New Mexico.

April 10, 1990.
Rehearing Denied May 23, 1990.

Linda Zemke, Sullivan, Villella, Skarsgard & Noya, Charles J. Noya, Albuquerque, for plaintiff-appellant.

Hal Stratton, Atty. Gen., Bruce Charles and Nann Houliston, Asst. Attys. Gen., Santa Fe, for defendant-appellee State of N.M.

Harl D. Byrd, Santa Fe, for defendant-appellee Morrison.

Montgomery & Andrews, P.A., John B. Pound, Ann B. Hemenway, Santa Fe, for defendant-appellee Kruger.

Watrous & Reardon, Thomas S. Watrous, Albuquerque, for defendant-appellee Fox & Associates.

## OPINION

BACA, Justice.

This case is before us on an appeal of the grant of defendants-appellees' motion for summary judgment in an action for breach of contract and negligence. We find that no material issues of fact exist, that summary judgment was appropriately granted, and we affirm the judgment below.

### FACTS

This case arises out of a construction project to build the Las Cruces Medium Security Facility. Multiple parties are involved: Gardner–Zemke Company (Gardner–Zemke), plaintiff below, which was the prime electrical contractor for the project, sued the State of New Mexico, Morrison–Knudson, the construction manager for the project, W.C. Kruger (Kruger), the architect, and Fox & Associates, Inc. (Fox), the firm that prepared the soil reports.

To secure contractors for the various aspects of the project, the state solicited bids. Included in the bid document package was a soil report, prepared by Fox, describing subsoil conditions at the site. The report consisted of several sections, including a narrative section summarizing the subsoil conditions and a technical section describing the data summarized in the narrative section. The technical section contained graphs detailing blow counts—the amount of feet a 140–pound hammer drove a two-inch sampler after a number of blows—and a legend explaining their significance. Kruger and Morrison–Knudson were contractually bound to prepare bidding documents, and they decided to include the Fox report with the pre-bid documents.

Gardner–Zemke, relying in part on the Fox soil report that it received in the bid package, was the successful bidder for the electrical work. The parties dispute the meaning of the report, but Gardner–Zemke maintains that the report meant to it that the soil consisted primarily of sand. This was relevant to their bid because the electrical work required trenching through the surface. Gardner–Zemke submitted affidavits below indicating that other electrical contractors would interpret the report as it

did, relying primarily on the narrative portion and interpreting the term "calcareous sand" to mean sand consisting of limestone, rather than hard subsurface soil. The affidavits also indicate that electrical contractors do not know what "blow count" means, and appellant submits that it was acting reasonably when it relied on the narrative portion of the report rather than the technical sections detailing the blow counts.

Portions of the subsurface soil consisted, however, not of sand but of hard limestone rock and caliche. This was more expensive to trench through than Gardner–Zemke had anticipated, and appellant brought this suit under the contract's changed conditions clause to recover its excess costs.

The contract contained a clause pertaining to concealed conditions allowing the contract to be equitably adjusted if subsurface conditions differed materially from what the contractor could reasonably expect.

Several issues are raised on appeal. Appellant contends that the trial court failed to interpret the report as would a reasonable contractor, asserting that the proper standard for the trial court to use in reviewing the Fox report is from the perspective of a reasonable electrical contractor interpreting the report. It maintains that the trial court improperly ignored the affidavit evidence presented, which indicated that other electrical contractors would interpret the report as did Gardner–Zemke, and that this disputed interpretation of the report made summary judgment inappropriate. Appellant further contends that the trial court erred by relying on an unpublished opinion of the court of appeals, *Mesilla Valley Construction Co. v. Morrison–Knudson Co.*, No. 9404 (N.M.Ct.App., filed March 3, 1988), a case involving different parties but similar issues and that involved an interpretation of the Fox soil report. Appellant also argues that Morrison–Knudson, Fox, and Kruger all owed a duty to Gardner–Zemke to ensure that the report was accurate, and that exculpatory language in the contract was ineffective to defeat the claim based on the changed conditions clause. The essence of appellant's argument is that a reasonable electrical contractor, such as itself, would not read the technical information in the report to indicate the presence of limestone rock and would not consider that the technical information was relevant to its bid. It would read the narrative portion to indicate sand, and therefore the meaning to be assigned to the report was an issue of fact, making summary judgment inappropriate.

The various appellees dispute Gardner–Zemke's assertions. They all argue that the soil report was unambiguous; that the court applied the proper standard in reviewing the report; that no material issues of fact exist regarding the report—the court properly interpreted the report as a matter of law; and that the court made an independent interpretation of the Fox report and did not rely exclusively on *Mesilla Valley*. Fox, Kruger, and Morrison–Knudson also contend that each owed no duty to Gardner–Zemke that was breached. Kruger and Morrison–Knudson contend that the contract's exculpatory provisions effectively preclude Gardner–Zemke's claims, and Fox contends that certain issues raised by the appellant are not included in the docketing statement and may not be raised on appeal.

We consider the following issues to determine whether summary judgment was appropriate: (1) Whether the court applied the proper standard of review in examining the Fox report; and (2) whether the court properly determined that the report was unambiguous as a matter of law. Our disposition of these issues resolves the dispute, and we do not find it necessary to consider the other issues raised.

■ Preliminarily, we dispose of Fox's contention that certain issues raised on appeal were not included in the docketing statement and therefore may not be raised on appeal. In *Gallegos v. Citizens Insurance Agency*, 108 N.M. 722, 731, 779 P.2d 99, 108 (1989), we determined that for this court the docketing statement, although mandatory to perfect appeals, is not jurisdictional, and we may in our discretion

consider error properly preserved below but omitted from the docketing statement.

■ Summary judgment is appropriate if no genuine issue as to any material fact exists, so that the movant is entitled to judgment as a matter of law. *State v. Intigon Indem. Corp.*, 105 N.M. 611, 612, 735 P.2d 528, 529 (1987); SCRA 1986, 1–056(C). In considering a motion for summary judgment, the trial court must view the pleadings, affidavits, and depositions in the light most favorable to the opposing party. *Intigon*, 105 N.M. at 612, 735 P.2d at 529. The movant bears the initial burden of demonstrating he is entitled to summary judgment; once the movant makes out a prima facie showing, the burden shifts to the opposing party to show at least a reasonable doubt that a genuine issue exists. *Koenig v. Perez*, 104 N.M. 664, 666, 726 P.2d 341, 343 (1986). A summary judgment motion is not an opportunity to resolve factual issues, but should be employed to determine whether a factual dispute exists. *Pharmaseal Laboratories, Inc. v. Goffe*, 90 N.M. 753, 568 P.2d 589 (1977). If genuine controversy as to the facts exists, a motion for summary judgment should be denied and the factual issues should proceed to trial. *Great W. Constr. Co. v. N.C. Ribble Co.*, 77 N.M. 725, 729, 427 P.2d 246, 249 (1967). On review the court must consider the whole record for evidence that puts a material fact at issue. If the facts are not disputed, and only the legal effect of the facts remains to be determined, summary judgment is appropriate. *Id.*

The trial court, in granting the defendants' motion for summary judgment, determined that, as a matter of law, the soil report unambiguously indicated the presence of rock.

Gardner–Zemke contends that the trial court erred when it failed to interpret the soil report from the perspective of a reasonable electrical contractor, and that a reasonable electrical contractor would not have understood the significance of the blow-count analysis in the report. Accordingly, it argues that summary judgment was inappropriate—that the pre-bid documents incorporated in the bid package were ambiguous to it because the soil report misled the contractor as to subsoil conditions, and therefore a material issue of fact was before the court to decide. Alternatively, Gardner–Zemke contends that we should find the report ambiguous as a matter of law and construe the report in its favor, relying on the principle of contra proferentum. It maintains that appellees presented no evidence that a reasonable contractor would interpret the soil report as unambiguously indicating rock, and that the only evidence presented was appellant's affidavits. Thus, it contends, appellees did not rebut Gardner–Zemke's prima facie showing of ambiguity. Appellant also contends that the trial court inappropriately relied on *Mesilla Valley* to collaterally estop the issue of whether the soil report was ambiguous as a matter of law, basing this argument on the absence of identity of parties, *see State v. Rogers*, 90 N.M. 604, 566 P.2d 1142 (1977), and the contention that *Mesilla Valley* considered different legal and factual issues..

■ Gardner–Zemke correctly argues that the doctrines of collateral estoppel and res judicata cannot be used against it with regard to the issues litigated in *Mesilla Valley*. However, our reading of the record indicates that the trial court did not invoke either doctrine, and it did not rely on *Mesilla Valley* to definitively resolve the issue of the soil report's alleged ambiguity. Under the record before us, we find no impropriety in the trial court's examination of that decision. Moreover, the court's letter opinion clearly indicates that it independently examined the soil report. Accordingly, we find that the court did not commit reversible error by improperly relying on *Mesilla Valley*.

■ We agree with Gardner–Zemke that the proper standard for interpreting the soil report is from the perspective of what a reasonably experienced and intelligent contractor would have understood it to mean, and not from the perspective of an expert. *Ets–Hokin Corp. v. United States*, 420 F.2d 716, 722, 190 Ct.Cl. 668 (Ct.Cl.1970); *Kaiser Indus. Corp. v. Unit-*

*ed States,* 340 F.2d 322, 169 Ct.Cl. 310 (Ct.Cl.1965).[1] However, our analysis of the record and the trial court's opinion indicates that the court did apply an appropriate standard.

Gardner–Zemke maintains that, nevertheless, the court did not consider the report from the perspective of a reasonable contractor because it ignored the uncontroverted affidavits submitted from other electrical contractors to the effect that they, too, interpreted the report as did Gardner–Zemke. Accordingly, Gardner–Zemke concludes that a reasonable contractor would not have understood the report, and that summary judgment was inappropriate. As will be shown, this contention is meritless, and the affidavits do not demonstrate a material issue of fact.

■ The pre-bid documents, including the soil report, were integrated into the contract, and should be analyzed according to accepted canons of contract law, and, if the documents are misleading, the contracting body has breached an implied warranty of correctness. *See Vinnell Corp. v. State,* 85 N.M. 311, 512 P.2d 71 (1973).[2]

■ Interpretation of a contract to determine whether a condition encountered is a changed condition allowing an equitable adjustment of the contract is a question of law. *T.F. Scholes, Inc. v. United States,* 357 F.2d 963, 174 Ct.Cl. 1215 (Ct.Cl.1966). The question of whether an ambiguity exists is one of law. *Levenson v. Mobley,* 106 N.M. 399, 744 P.2d 174 (1987). Once the contract is determined to be ambiguous, the meaning to be assigned the ambiguous terms is a question of fact. *Segura v. Molycorp, Inc.,* 97 N.M. 13, 636 P.2d 284 (1981). The government, as drafter of the document, bears the burden to use language conveying its intent. If it does not, and the language is reasonably susceptible to more than one meaning consistent with its language and as an objective indication of the parties' intent, the specification is ambiguous and will be interpreted against the drafter. *Smith v. Tinley,* 100 N.M. 663, 674 P.2d 1123 (1984). This rule applies, however, only if the court is otherwise unable to ascertain the parties' intent. *El Paso Natural Gas Co. v. Western Bldg. Assocs.,* 675 F.2d 1135 (10th Cir.1982). A disagreement over the meaning of specifications does not necessarily indicate an am-

---

**1.** Fox argues that New Mexico law does not create this standard of review in construction contracts whereby the *contract* is interpreted from the reasonable contractor perspective. This is a misstatement of the issue. The contract is not examined from that perspective, but is interpreted by accepted canons of contract construction. However, the soil report is examined from the perspective of what a reasonable contractor would understand it to mean, to determine whether there is an ambiguity and what the contractor's reasonable expectations were when entering a bid. The contractor is not held to a standard of what an expert would have understood the soil report to mean.

**2.** Appellee Fox contests this premise, arguing that *Vinnell* stands only for the proposition that a cause of action against the government for misleading information contained in bidding documents must sound in contract, not tort. Fox contends that there is no requirement that subsoil reports must be considered part of the contract as a matter of law, and insists that, as a general proposition, a contract must be analyzed on a case-by-case basis, citing *Yankee Atomic Electric Co. v. New Mexico and Arizona Land Co.,* 632 F.2d 855 (10th Cir.1980). Fox has not provided any authority for its contention that a pre-bid document should not be considered part of the agreement between the par-

ties, and it has not explained why, when we consider this contract according to its terms and conditions, we should not find the pre-bid report to form part of the contract.

Fox is correct in asserting that *Vinnell* considered only a narrow question of law, but we find that appellant's contention is a logical extension of that case—if a cause of action for misrepresentations contained in pre-bid documents must lie in contract, the documents must be considered part of the contract. Considering this contract according to its terms and conditions, we reach the same conclusion. The soil report was included in the pre-bid documents, inducing reliance by the bidders. When Gardner–Zemke submitted its bid, it considered the soil report to define, in part, the scope of its work and the report could only have been included to delineate the scope of the project, forming part of the bargain between the parties. Indeed, the changed conditions clause in the contract, upon which appellant relies, could have no meaning if the conditions as represented by the pre-bid documents were not considered to form part of the agreement. Accordingly, we hold that the soil report should be considered part of the agreement between the parties.

biguity—the contractor's interpretation must be reasonable and the contract must be fairly susceptible to different constructions. *See Levenson*, 106 N.M. at 401, 744 P.2d at 176; *see also Major v. Bishop*, 462 F.2d 1277 (10th Cir.1972). To be reasonable, an interpretation must be consistent with the contract language: the language of the entire contract must be considered, and selected portions cannot support a claim of ambiguity. *Lindbeck v. Bendziunas*, 84 N.M. 21, 498 P.2d 1364 (Ct.App. 1972).

Gardner–Zemke argues that a contractor, reasonably experienced and intelligent, such as itself, would not have understood the soil report to indicate the presence of rock. In support of this contention, it submitted affidavits from other electrical contractors that indicated that they too read the report and understood it to mean that subsurface conditions consisted of sand, not rock.[3] Appellant admits that it did not understand the term blow count; it contends that a reasonable electrical contractor is unfamiliar with the term and could not be expected to understand it, and that it did not feel that the chart and the technical explanation contained in the report were relevant to its bid. It maintains that it acted reasonably when it relied on the narrative explanation for the electrical bid. Gardner–Zemke also admits that the subsoil conditions were very important to its bid; in a project such as this, the trenching and subsurface work that accompanies the electrical work is significant and can amount to a major portion of the project.

■ To prevail on a changed condition claim, the contractor must show that he was reasonably unaware that the condition existed, either because of the representations made about the site or because the condition was hidden. J.C. McBride & I.H. Wachtel, *Government Contracts* § 29.20 (Rev'd 1989) (hereinafter McBride & Wachtel). A party to a contract "has a duty to read and familiarize himself with its contents before he signs and delivers it * * *." *Smith v. Price's Creameries*, 98 N.M. 541, 545, 650 P.2d 825, 829 (1982). In interpreting a contract, it "must be considered and construed as a whole, with meaning and significance given to each part in its proper context with all other parts, so as to ascertain the intention of the parties." *Schultz & Lindsay Constr. Co. v. State*, 83 N.M. 534, 535, 494 P.2d 612, 613 (1972). Gardner–Zemke cannot prevail on its claim that as an electrical contractor it could not reasonably have been expected to have read and understood the blow count tables in the soil report; every party to a contract has a duty to read the document in its entirety and is charged with knowledge of the document. This is especially true when, as here, the document pertained to a significant element of the project. By not having read the document in its entirety, Gardner–Zemke cannot now claim that it was *reasonably* unaware of the conditions detailed in the unread portion.[4]

3. The three affidavits state essentially similar views. All of the deponents were estimators for electrical contractors, and all, after reaffirming the significance of the trenching in an electrical job and the importance of knowing the soil condition, submitted that they relied solely on verbal descriptions of the conditions in preparing their bids. One stated he would place great reliance on core samples, but did not understand blow counts. They stated that the terms "blow count" and "calcareous sand" had no meaning to them, although one indicated he thought calcareous sand meant caliche sand.

4. In *Flippen Materials Co. v. United States,* 312 F.2d 408, 160 Ct.Cl. 357 (Ct.Cl.1963), a case presenting an issue very similar to the one we address today, the contractor in a contract to manufacture crushed rock for the United States government claimed that the rock in the quarry differed from what it was represented to be in the bidding documents and sought an equitable adjustment pursuant to the changed conditions clause. Prior to the execution of the contract, the government had drilled holes in the quarry area to ascertain the subsurface conditions; it then provided the contractor with drawings representing the profiles of the boring for the area. The drawings showed that there were cavities in the limestone, but did not indicate that, within the cavities, clay had been found. The presence of clay made the excavation of the limestone much more difficult and costly. The contractor claimed that the drawings upon which it relied did not indicate the clay and that therefore it was entitled to an adjustment in the contract. The court denied the claim, because the contractor knew of field logs that were available to it and that unambiguously indicated the presence of clay. The contractor was found to have a

■ If Gardner–Zemke reasonably did not understand the meaning of blow counts, as it claims, it had a duty to ascertain what the term meant and its significance. *See Leal v. United States*, 276 F.2d 378, 384 n. 1, 149 Ct.Cl. 451 (Ct.Cl.1960); McBride & Wachtel, *supra*, § 29.70 ("Whenever there is any doubt respecting the government's representation in the solicitation of subsurface conditions, the bidder has the affirmative duty of seeking clarification.").

■ Even if the narrative portion of the report can be interpreted to indicate that the subsoil consisted of sand, Gardner–Zemke, if it had read the report in its entirety, would have been alerted to this and was under a duty to inquire. Section 4.2.1 of the contract states: "The Contractor shall carefully study and compare Contract Documents and shall at once report to the Architect and the Construction Manager any error, inconsistency or omission that

may be discovered." Thus, because Gardner–Zemke, as a reasonable contractor, if it had read the provision in question, would have noted the obvious discrepancy in its interpretation of the narrative section of the soil report and the technical section of the report, and because it was under a contractual duty to inform the government of the discrepancy, it cannot prevail on its claim. *See also Beacon Constr. Co. v. United States*, 314 F.2d 501, 161 Ct.Cl. 1 (Ct.Cl.1963) (relying on a similar clause in a federal construction contract to require the contractor to notify and seek clarification from the government of a discrepancy of which it knew).[5]

Accordingly, we hold that the soil report was not ambiguous and that summary judgment was appropriate. Even if the narrative portion of the report would indicate sand to a reasonable contractor preparing a bid, the contract should be read as

---

duty to fully acquaint itself with the relevant information, including information available but not within the four corners of the contract. In the case presented to us today, appellant had to venture no further than the end of the soil report for all of the information, and he cannot be heard to complain that all of the relevant information was not available to it.

The contractor in *Flippen* also contended that it was entitled to rely on definitive representations contained within the contract itself, and, having found what it determined to be a definitive statement of the conditions, was under no duty to investigate further. The court disagreed, stating:

The cases do hold that the Government is liable for damage attributable to misstatements of fact (in a contract or specifications) which are representations made to the contractor. The cases also hold that, in such circumstances, the defendant is not relieved from liability by general contractual provisions requiring the bidder to investigate the site or satisfy himself of conditions, or stating that the United States does not guarantee the statements of fact in the specifications, etc. But the cases do *not* hold that a bidder can rely on some portion of the information supplied by the Government without looking at other Government materials (to which he is directed by the contract documents themselves) which qualify, expand, or explain the particular segment of information on which the contractor intends to rely.

*Id.* at 413, 160 Ct.Cl. 357 (footnotes omitted).
This court, too, has previously decided the issue of whether a contractor has the right to

rely upon a representation regarding conditions to be encountered in a construction contract. In *State ex rel. Santa Fe Sand & Gravel Co. v. Pecos Constr. Co.*, 86 N.M. 58, 61, 519 P.2d 294, 297 (1974), we determined that a contractor was not entitled to rely upon a representation of conditions to be encountered when the condition was equally within its knowledge or it had the opportunity to independently ascertain the conditions for itself. We cannot see how, when a contractor is held to a level of knowledge equal to the owner when he has the opportunity to independently investigate, he can be held to a lesser standard when he need only ask the significance of information contained within the document.

5. This is not to require every contractor to be responsible for determining every possible ambiguity in a contract of this type. The ambiguity must be obvious, so that a reasonable contractor would be aware of it. It is not necessary for a contractor to inquire about all possible discrepancies, only those that are obviously ambiguous, and a reasonable contractor is not charged with careful study of every possible detail in a complex specification or clause when preparing a bid. In a case such as the one presented today, however, where the contractor considered the trenching to be a significant part of the bid and where the report was not overly lengthy or complex, and where it is apparent that if it had read the entire document and taken the minimal effort to understand it, the discrepancy between its interpretation of the narrative and the obvious interpretation of the data would have created a patent ambiguity.

a whole, construing each part harmoniously, and a reasonable contractor would have noted the obvious discrepancy between its interpretation of the narrative portion and the technical portion, giving rise to its duty to inquire.

Because we dispose of this appeal on these grounds, we deny Gardner–Zamke's request that we interpret the report against the drafter. Furthermore, we find it unnecessary to address whether the various defendants owed a duty to Gardner–Zemke and the effect of the various exculpatory clauses contained in the contract.

In accordance with this opinion, we hold that the summary judgment of the district court was appropriate, and we AFFIRM.

IT IS SO ORDERED.

SOSA, C.J., and DONNELLY, Judge, Court of Appeals, concur.