This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**EUGENE FRANK,**

Plaintiff-Appellant,

**v.**                                                                 **No. 32,408**

**DANIEL J. O'FRIEL and ROSS S. RANDALL,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Barbara J. Vigil, District Judge**

William G. Gilstrap, P.C.
William G. Gilstrap
Albuquerque, NM

for Appellant

Law Office of Jack Brant, P.C.
Jack Brant
Albuquerque, NM

for Appellee O'Friel

Law Office ▲ Briggs F. Cheney
Briggs F. Cheney
Albuquerque, NM

for Appellee Randall

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

{1}     Appellant Eugene Frank appeals the district court's order granting summary judgment and dismissing Appellant's legal malpractice claims. Appellant argues that the grant of summary judgment should be reversed because there are material disputed facts. After due consideration, we conclude that there are no material disputed facts and that Defendants were entitled to summary judgment as a matter of law. Therefore, we affirm the district court.

**A.     BACKGROUND**

{2}     Appellant was in a long-term relationship with his partner Gregory L. Baird in Santa Fe, New Mexico. The partners lived together from 1999 to early 2007. Defendants Daniel O'Friel and Ross Randall are attorneys practicing law in Santa Fe, New Mexico. Defendants prepared a trust instrument entitled the "Frank-Baird Revocable Trust," dated January 25, 2006, for Appellant and Mr. Baird. Appellant and Mr. Baird later ended their relationship and Appellant sought to revoke the trust on May 24, 2007. Appellant then filed a lawsuit requesting a declaratory judgment, *Frank v. Baird*, No. D-0101-DM-2007-00489, claiming that the trust was unilaterally revocable and that the trust was void as his consent was obtained by undue influence.

Defendants testified in that proceeding that the trust agreement was mutually, not unilaterally, revocable. The district court disagreed and ruled that the trust could be unilaterally revoked and in fact was revoked on May 24, 2007. The district court did not expressly rule on the validity of the trust. We will refer to this proceeding as "the 2007 lawsuit."

{3} In March 2011 Appellant filed a complaint for legal malpractice against Defendants. Specifically, Appellant claimed that Defendants failed to: (1) investigate Appellant's competency prior to the execution of the trust, (2) communicate the conflict of interest that arose when Defendants represented both Appellant and Mr. Baird in the trust matter, (3) inform Appellant that Defendant O'Friel's representation of Mr. Baird in an unrelated legal matter created a possible conflict of interest, (4) instruct Appellant and Mr. Baird to obtain separate representation in connection with the creation of the trust, (5) have the parties sign a waiver of the conflict arising out of the joint representation, and (6) support Appellant's legal position concerning revocability of the trust in the 2007 lawsuit. The last claim was added when Appellant amended his complaint.

{4} Defendants moved for summary judgment. They argued that: (1) the doctrine of collateral estoppel prevents Appellant from litigating the validity of the trust, and (2) the undisputed facts demonstrate that Defendants were not negligent in

3

discharging their duties. They also argued that Appellant's claim that Defendants had breached a duty to support his position in the 2007 lawsuit had no merit. The district court granted summary judgment in favor of Defendants on these grounds. Appellant filed a timely appeal of the dismissal of his complaint.

**B.     DISCUSSION**

{4}     "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. On appeal, we review de novo the district court's decision to grant summary judgment. *See Hasse Contracting Co. v. KBK Fin., Inc.*, 1999-NMSC-023, ¶ 9, 127 N.M. 316, 980 P.2d 641. We view the pleadings, affidavits, and depositions presented for and against a motion for summary judgment in a light most favorable to the nonmoving party. *See Gardner-Zemke Co. v. State*, 1990-NMSC-034, ¶ 11, 109 N.M. 729, 790 P.2d 1010. Summary judgment is foreclosed either when the record discloses the existence of a genuine controversy concerning a material issue of fact or when the trial court granted summary judgment based upon an error of law. *See id.* In addition, summary judgment may be proper even though some disputed facts remain, if the disputed facts relate to immaterial issues. *See Oschwald v. Christie*, 1980-NMSC-136, ¶ 6, 95 N.M. 251, 620 P.2d 1276.

**{5}** In order to determine which issues are material to legal malpractice claims, we review the elements of Appellant's claims. "To recover on a claim of legal malpractice based on negligence, a plaintiff must prove three essential elements: (1) the employment of the defendant attorney; (2) the defendant attorney's neglect of a reasonable duty; and (3) the negligence resulted in and was the proximate cause of loss to the plaintiff." *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 1993-NMCA-008, ¶ 9, 115 N.M. 159, 848 P.2d 1086. In this context, summary judgment would be improper if there was a genuine disputed fact related to these elements.

**{6}** In their pleadings below and in the hearing on Defendants' motions, the parties focused on the second element. They do not appear to dispute the first element because Defendants were employed as Appellant's attorneys. The third element—damages or loss caused by Defendants' breach—was raised in Appellant's complaint but was not argued by either party in their briefs supporting or opposing the summary judgment motions. In the hearing, Defendants mentioned in passing that Appellant did not incur any harm because of Defendants' breach. Plaintiff also addressed damages only glancingly. Similarly, on appeal, neither party makes a substantive argument pertaining to this element; rather they focus on whether there are disputed facts related to Defendants' neglect of a reasonable duty. Since it was neither

litigated below nor central to the district court's ruling, and it was not presented or developed by the parties on appeal, this Court will not address the third element. *See State v. Clark*, 1989-NMSC-010, ¶ 85, 108 N.M. 288, 772 P.2d 322 (stating that the appellate courts will not address issues not raised by the parties); *New Mexico Dep't of Human Servs. v. Tapia*, 1982-NMSC-033, ¶ 9, 97 N.M. 632, 642 P.2d 1091 (holding that the general rule is that the appellate courts should not address an issue not raised). Instead, we assume without deciding that the element was met and concentrate on whether Defendants neglected a reasonable duty.

{7} Appellant's six claims fall into three broad categories. Appellant claimed that Defendants were negligent and breached their fiduciary duties by: (1) not communicating with Appellant regarding possible conflicts of interest created by Defendants' representation of both Mr. Baird and Appellant, (2) not investigating and evaluating Appellant's mental capacity to execute the trust, and (3) failing to provide a legal opinion to the effect that the trust was unilaterally revocable by Appellant. We address these categories in turn.

**1.      Conflict of Interest**

{8} Appellant's claim for professional negligence primarily relied on Defendants' alleged failure to disclose potential conflicts of interest to Appellant during the trust-creation process. He maintains that (1) Defendants failed to advise him of the

6

potential for conflicts of interest and (2) Defendants failed to obtain a signed waiver-of-conflict form.

{9} We begin with Appellant's first assertion. In their summary judgment motion, Defendants argued that they made sufficient disclosures to Appellant regarding potential conflicts of interest and provided an affidavit by Defendant O'Friel to that effect. Appellant argued to the contrary and attached his own affidavit. The issue on appeal is whether the affidavits created a genuine issue of material fact as to whether the risks of common representation were explained to Appellant.

{10} In his affidavit, Defendant O'Friel averred that he informed Appellant of the potential for conflict when a couple uses one attorney to prepare a joint trust. Defendant O'Friel stated,

> I told Frank he should get another attorney to do the work. Frank told me he had consulted with other attorney[]s, he understood the potential for conflict. He wanted us to do the work. . . . We discussed the advantages and benefits of common representation, including the charges for the work.

Defendant O'Friel also stated in his affidavit that "Frank and Baird consented to the common association and representation with Randall."

{11} Appellant asserted in his affidavit that Defendant O'Friel never informed him of any potential for conflict; that Defendant O'Friel did not discuss with him any advantages or risks of common representation; and that Appellant never consented to

7

Defendants' common representation of him and his partner. Appellant also stated that Defendant O'Friel never encouraged him to consult other attorneys about estate planning.

{12} Because Appellant's statements in his affidavit appear to create a direct conflict in the facts, it would appear that summary judgment should not have been granted. *See Cebolleta Land Grant ex rel. Bd. of Trustees v. Romero*, 1982-NMSC-043, ¶ 3, 98 N.M. 1, 644 P.2d 515 (holding that "[t]he sole purpose of a summary judgment proceeding is to determine whether a genuine issue of material fact exists"). However, under certain circumstances, statements made in an affidavit can be ignored for summary judgment purposes. *See, e.g.*, *Apodaca v. Atchison, Topeka & Santa Fe R.R.*, 1960-NMSC-078, ¶ 7, 67 N.M. 227, 354 P.2d 524 (rejecting nonmovant's affidavit which contradicted prior deposition testimony and was "well calculated to circumvent the motion for summary judgment"); *see also Rivera v. Trujillo*, 1999-NMCA-129, ¶¶ 8-9, 12, 128 N.M. 106, 990 P.2d 219 (same). The district court appeared to rely on this principle in rejecting Appellant's affidavit and granting Defendants' motions for summary judgment.

{13} In his affidavit, Appellant claimed that Defendant O'Friel failed to communicate the potential for conflict of interest in representing both Appellant and Baird. In earlier deposition testimony, however, Appellant remembered almost

8

nothing about the meetings and/or conversations he had with Defendant O'Friel. For example, in deposition testimony, Appellant stated that he had no memory of his meetings with Defendant O'Friel independent from what he read in Defendant O'Friel's notes.

Q. Do you remember those meetings with [Defendant] O'Friel?

A. Only from his notes.

Q. You otherwise don't remember those meetings with him?

A. I remember going to his office but I do not remember the content of the discussions.

. . . .

Q. But without [Defendant] O'Friel's notes your testimony is that you wouldn't have any recollection of what was discussed with [Defendant] O'Friel?

A. Correct.

Appellant also stated that he recalled "going to [Defendant O'Friel], but I have no recollection of any regularity or any significant meetings, no, I don't."

{14}    Thus, during his deposition taken approximately two years prior to the date of the affidavit, Appellant testified that he did not recall anything about his meetings with Defendant O'Friel. However, in the affidavit, Appellant relied on the same notes

but claimed to recall details of his meetings with Defendant O'Friel, in particular the fact that potential conflicts of interest were not discussed. Significantly, Appellant provided no reason for his sudden ability to recall specific facts that he could not recall during his deposition. Appellant displayed no confusion at the time of the original deposition and had access to the same documentary evidence that he relied on for purposes of his affidavit. Furthermore, he does not point to newly discovered evidence which would have refreshed his recollection or to any independent evidence corroborating the statements he made in his affidavit.

{15} In addition, in his deposition Appellant admitted that he consulted attorneys other than Defendants concerning "estate matters," including two attorneys employed by the Rubin Katz law firm as well as an attorney who worked for the Sutin Firm. In Appellant's affidavit, however, he claimed that he had not consulted any attorney other than Defendants and Janet Clow about estate planning.

{16} Thus, Appellant's assertions in the affidavit contradicted his deposition testimony. As discussed above, the law in this state is clear that a non-movant will not be allowed to defeat summary judgment by attempting to create a sham issue of fact. *See Rivera,* 1999-NMCA-129, ¶ 12 ( "[P]ost-hoc efforts to nullify unambiguous admissions under oath will not create a factual dispute sufficient to evade summary judgment."). We conclude that the district court appropriately ignored the statements

10

in Appellant's affidavit. Therefore, we affirm the district court's ruling that Appellant's affidavit failed to create a material issue of fact concerning the question of whether Defendants adequately disclosed conflicts-of-interest issues to Appellant.

{17} We note also that there is an alternative basis supporting the district court's disregard of Appellant's affidavit. The affidavit failed to create a genuine issue of fact because it was not based on personal knowledge as required by Rule 1-056(E) NMRA. Under Rule 1-056(E), "[s]upporting and opposing affidavits shall be made on personal knowledge, [and] shall set forth such facts as would be admissible." Appellant in his deposition testified that he could recall his meetings with Defendant O'Friel only from O'Friel's notes and without those notes, he did not have any independent recollection of what was discussed with Defendant O'Friel. Specifically, he stated as follows:

Q.    What were you discussing at those meetings?

A.    The only thing I know in reading [Defendant] O'Friel's notes, because I don't have any recollection of the meetings but in reviewing, if you want me to tell you what I discovered in reading [Defendant] O'Friel's notes, I will do that, but I have no recollection of the meetings.

Q.    Do you have any recollection at this time over what period those meetings with [Defendant] O'Friel took place?

A.    Only from the record of reading [Defendant] O'Friel's notes.

        . . . .

11

Q. Your testimony here, am I getting it correctly, that it is [sic] that you have no specific recollections of those meetings?

A. I recall going to [Defendant O'Friel], but I have no recollection of any regularity or any significant meetings, no, I don't.

{18} Based on this testimony, it is apparent that in his affidavit Appellant was merely providing his interpretation of Defendant O'Friel's notes, not recalling specific details from his own memory. Although Appellant attempted to claim that his knowledge of his dealings with Defendant O'Friel was refreshed, he was able to state only that it was refreshed by O'Friel's notes.

My memory of the events of the case against Mr. Baird, my dealings with [Defendant] O'Friel, [Defendant] Randall, and other facts and circumstances for the period of time involved is good but, for some things, my memory has been refreshed by documents, such as the many pages of notes from [Defendant] O'Friel. This is particularly true concerning the allegations that [Defendant] O'Friel has made concerning statements that he alleges he has made or discussions that he contends he had with me.

Thus, Appellant's statements in his affidavit that Defendant O'Friel did not discuss the potential conflict with him were based solely on the fact that such a discussion was not mentioned in Defendant O'Friel's notes, not on any recollection Appellant had of their meetings. As such, Appellant's statements in his affidavit that Defendant O'Friel did not discuss any potential conflict during the meetings are not based on personal knowledge and constitute no more than belief or opinion testimony. *See Martinez v. Metzgar*, 1981-NMSC-126, ¶¶ 8-9, 97 N.M. 173, 637 P.2d 1228 (holding that a

12

witness's testimony that the defendant had fallen asleep at the wheel of a moving pickup was not based on personal knowledge when the witness was not paying attention to the driver at the time). "Belief or opinion testimony alone, no matter how sincere it may be, is not equivalent to personal knowledge." *Id.* ¶ 9. The fact that Appellant relied on the same materials to refresh his memory in both the deposition and the creation of the affidavit but still made contradictory statements also refutes Appellant's argument that his affidavit was based on refreshed personal knowledge. Since Appellant's affidavit was not based on personal knowledge, it is insufficient to create a material issue of fact under the summary judgment standard. *See id.*

{19} To the extent that Appellant points to discrepancies between Defendants' depositions and affidavits pertaining to (1) the length of Defendants' representation of Appellant, (2) whether Defendant Randall discussed conflicts of interest with Appellant, and (3) Defendant Randall's repudiation of an earlier affidavit, we agree with the district court that these disputed facts are not material to the question of whether Defendant O'Friel discussed the potential conflict of interest with Appellant and advised Appellant to seek advice from another attorney.

{20} Absent Appellant's statements in his affidavit, which were properly disregarded by the district court, the district court was left only with Defendant O'Friel's affidavit maintaining that he did discuss conflict-of-interest issues with Appellant, did properly

disclose the potential conflict, and encouraged Appellant to consult another attorney. The court therefore correctly granted summary judgment on these aspects of Appellant's claims.

{21} Appellant's second assertion was that Defendants were negligent and breached their fiduciary duties by failing to have Appellant and Mr. Baird execute an "acknowledgment and waiver of the conflict" form consistent with Rule 16-107(B)(4) NMRA of the New Mexico Rules of Professional Responsibility. This rule mandates that an attorney should not represent a client whose interests are adverse to those of a present client or whose interests are adverse to those of a former client, unless each client consents after consultation. *See* Rule 16-107(A).

{22} The current version of Rule 16-107, which went into effect on November 3, 2008, requires a written conflicts waiver. However, the version of the Rule in effect at the time relevant to this case did not. *See* Rule 16-107 Annotation. We note that disciplinary rules "are not designed to be a basis for civil liability" and "[v]iolation of a rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached." New Mexico Rules of Professional Responsibility–Scope. *But see Spencer v. Barber*, 2013-NMSC-010, ¶ 15, 299 P.3d 388 ("While the Rules of Professional Conduct . . . not be used to launch a malpractice claim[,] . . . [they] still provide

14

guidance in ascertaining the extent of lawyers' professional obligations to their clients." (alterations and omission in original) (internal quotation marks and citation omitted)). Perhaps recognizing this limitation, Appellant argues that the absence of a written waiver or other notation in Defendant O'Friel's file can be considered evidence that no discussion of potential conflicts occurred, thus preventing summary judgment on this issue. In other words, Appellant contends that Defendants' failure to have Appellant sign a "waiver of conflict" form or otherwise document the advice created an evidentiary inference that Defendants failed to make the required disclosures regarding conflict of interest. Appellant cites no authority in support of this proposition and we may therefore assume no authority exists to support it. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. Appellant's argument fails him. Defendants made a prima facie showing that they discussed conflict-of-interest issues with Appellant. Having rejected Appellant's affidavit, Appellant's only remaining evidence to the contrary is the absence of written proof of such discussions. Appellant's argument cannot overcome the circumstance that the rule applicable at the time did not require a written waiver and the principle that the rules generally do not support any presumption of a breach of any legal duty. Given that Defendants agree that no written waiver exists, we conclude that its absence does not create a question of material fact as to Defendant O'Friel's positive

assertion that he alerted Appellant to the fact of a potential conflict of interest. The same conclusion holds with regard to the lack of notes in Defendant O'Friel's files. The fact that Appellant has provided us with no legal authority to support his contention that the absence of a written waiver creates an inference that the matter was not discussed bolsters our conclusion. We hold the district court appropriately rejected this effort to raise a genuine issue of material fact.

**2.    Duty to Evaluate Mental Capacity**

{23}    Appellant asserted that Defendants were negligent and breached fiduciary duties when they failed to investigate Appellant's mental competency during the trust-creation process. However, in his response to the first summary judgment motion, Appellant stated that "he does not contend that he was incompetent to execute the [t]rust." A contradiction is apparent. If Appellant had the ability to execute the trust, it is unclear how Defendants' failure to investigate Appellant's competency could constitute a breach of duty. Appellant does not address this problem and does not otherwise adequately develop or support his theory. We do not review unclear or inadequately developed arguments, or arguments for which no authority has been cited. *See State v. King*, 2007-NMCA-130, ¶ 17, 142 N.M. 699, 168 P.3d 1123 (refusing to consider arguments unsupported by authority or analysis); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating

16

that we will not review unclear or undeveloped arguments). We therefore affirm the grant of summary judgment on this claim.

**3. Testimony in the Underlying Lawsuit and Breach of Loyalty**

{24} Appellant also argues that Defendants breached their duty of loyalty to Appellant by testifying in the 2007 lawsuit that the trust could be revoked only by mutual agreement. Appellant appears to argue that Defendants were obligated to testify in support of his position in the 2007 lawsuit even if their actual opinion was to the contrary. He also argues that there is a material question of fact created by Defendant Randall's affidavit, in which Randall states that "[he] would no longer testify under oath as [he] did [in the 2007 lawsuit because he does] not believe that [Appellant] and Mr. Baird ever clearly verbalized an intent to create community property to [him]." Although Appellant argues that "[i]n the practice of law, there is no higher duty than one's loyalty to a client[,]" *Roy D. Mercer, LLC v. Reynolds*, 2013-NMSC-002, ¶ 1, 292 P.3d 466, he fails to explain how exactly this fact entitles him to relief in this case.

{25} Even a brief foray into the law on the duty of loyalty owed by attorneys to clients reveals that the nature of the duty is neither definite nor clear. *See* Eli Wald, *Loyalty in Limbo: The Peculiar Case of Attorneys' Loyalty to Clients*, 40 St. Mary's L.J. 909, 919-20 (2009) (discussing definitions of loyalty in the Rules of Professional

17

Responsibility, the Restatement (Third) of the Law Governing Lawyers, and in case law and stating, "The task of accounting for loyalty is complicated by the fact that the doctrine of attorney loyalty to clients includes two inconsistent definitions."); Restatement (Third) of Law Governing Lawyers § 16, cmt. e (2000) ("The responsibilities entailed in promoting the objectives of the client may be broadly classified as duties of loyalty, but their fulfillment also requires skill in gathering and analyzing information and acting appropriately. In general, they prohibit the lawyer from harming the client."). Some New Mexico cases have equated the "duty of loyalty" with the requirement to avoid conflicts of interest. *See, e.g., Rael v. Blair*, 2007-NMSC-006, ¶ 10, 141 N.M. 232, 153 P.3d 657; *State v. Joanna V.*, 2004-NMSC-024, ¶ 5, 136 N.M. 40, 94 P.3d 783. Others have equated the duty with a lawyer's duty to be a competent advocate. *See, e.g., State v. Price*, 1986-NMCA-036, ¶¶ 39-40, 104 N.M. 703, 726 P.2d 857 *modified on other grounds by State v. Ortega*, 1991-NMSC-084, 112 N.M. 554, 817 P.2d 1196; *Duncan v. Kerby*, 1993-NMSC-011, ¶ 11, 115 N.M. 344, 851 P.2d 466. Appellant does not attempt to explain how the alleged disputed fact here proves a violation of either of these types of duties. Neither does Appellant address how the duty of loyalty to clients is limited by a lawyer's duty to the court or other parties. *See Woodson v. Phillips Petroleum Co.*, 1985-NMSC-018, ¶ 17, 102 N.M. 333, 695 P.2d 483 (holding that "[l]awyers are

18

officers of the court and are always under an obligation to be truthful to the court"). Rule 16-303(A)(1) NMRA ("A lawyer shall not knowingly[] . . . make a false statement of fact or law to a tribunal[.]"); Restatement (Third) of Law Governing Lawyers, *supra*, cmt. c, § 16 ("The lawyer's legal duties to other persons also limit duties to the client.").

**{26}** Given the absence of substantive argument on the scope and limits of an attorney's duty of loyalty, we decline to address this issue further. *Headley*, 2005-NMCA-045, ¶ 15. Therefore, we affirm the district court's grant of summary judgment as to this claim.

**{27}** Since we affirm the district court's grant of summary judgment in favor of Defendants on these bases, we need not address the issue of collateral estoppel as an alternative basis for affirmance.

## C. CONCLUSION

**{28}** For the foregoing reasons, we affirm the grant of summary judgment in favor of Defendants and the dismissal of this case.

**{29}** **IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

19

_____

**JONATHAN B. SUTIN, Judge**


_____

**CYNTHIA A. FRY, Judge**